Marshall FRENCH and Susan French, Plaintiffs, Appellees,

v.

UNITED STATES of America, Defendant, Appellant.

No. 73-1282.

United States Court of Appeals, First Circuit.

Heard Nov. 7, 1973.

Decided Dec. 3, 1973.

Jane M. Edmisten, Atty., Tax Div., Dept. of Justice, with whom Scott P. Crampton, Asst. Atty. Gen., Carroll F. Jones, U. S. Atty., Meyer Rothwacks, and Jonathan S. Cohen, Attys., Tax Div., Dept. of Justice, were on brief, for appellant.

John W. Hanrahan, Manchester, N. H., with whom Hanrahan & Flynn, Manchester, N. H., was on brief, for appellees.

Before ALDRICH, McENTEE and CAMPBELL, Circuit Judges.

ALDRICH, Senior Circuit Judge.

 This is an action to recover a payment of additional income tax for the year 1964 assessed as a result of the Commissioner's classification of a claimed business bad debt as a nonbusiness one. Nonbusiness bad debts are equated with short term capital losses, and deductions on account thereof are subject to those limitations. Int.Rev. Code of 1954, § 166. The jury found for the plaintiffs, Marshall and Susan French, and the government appeals because of the court's failure to direct a verdict in its favor.[1]

Mr. French, hereinafter taxpayer, at all material times was an automobile dealer and salesman, the principal employee of his wholly-owned corporation in Meredith, New Hampshire, Meredith Motors. In the late 1950's he became acquainted with one Kelley, a similar dealer in a nearby town, who wholly owned and operated Pease Motors. From time to time he advanced money to Kelley for Pease Motors' needs, first as a friend, but subsequently receiving stock from Kelley, until by 1960 he owned all of the company stock. Thereafter he made loans to Pease Motors. In 1961 Pease Motors was obliged to borrow from a finance company for a car floorplan (factoring) account. The finance company required, and obtained, taxpayer's personal guarantee. Pease Motors failed and went out of business in 1964, and because of its insolvency taxpayer was obliged to pay $19,406 on his guarantee, for which he had no recourse. He claimed this as a business bad debt.

Taxpayer states the single issue as follows.

"Where a taxpayer's livelihood is the salary and commissions he earns from wholly owned corporations, whether his *payment* as guarantor of the obligation of one of the corporations, then insolvent, *made in order to protect and maintain the credit standing* of himself and the other wholly owned corporation so that it might continue to generate his salary is such

1. The government also seeks to press an exception to the charge, relying solely on an attempt to save its rights in a lobby conference before the charge was given. This practice, in violation of F.R.Civ.P. 51, has been "strongly condemned," Dunn v. St. Louis-San Francisco Ry. Co., 10 Cir., 1966, 370 F.2d 681, 683, to the extent that such procedure will be recognized only in extraordinary cases. Bouley v. Continental Cas. Co., 1 Cir., 1972, 454 F.2d 85; United States v. Taglianetti, 1 Cir., 1972, 456 F.2d 1055, 1057.

as to qualify as a business bad debt?" (Emphasis suppl.)

He spells this out:

"In 1964, taxpayer French was in the unenviable position of being forced to honor his personal guarantee of the financing commitments of a defunct automobile sales business [Pease] in order to permit the continued operation of his neighboring automobile dealership [Meredith], his only source of livelihood. The evidence in this case establishes that French's *payment* to New Hampshire Finance *was for the 'dominant motive' of protecting the sources of credit* and supply *for Meredith Motors,* his only source of salary which at all times relevant hereto was his only income from Meredith Motors." (Emphasis suppl.)

█ We do not accept this analysis. Taxpayer says, and we may agree, that the jury could have found that financing was essential to the business existence of Meredith Motors. From this it might be argued that if taxpayer had guaranteed a loan to Meredith Motors, his employer and source of his commissions, the debt resulting therefrom would have been a business debt. *Cf.* United States v. Generes, 1972, 405 U.S. 93, 92 S.Ct. 827, 31 L.Ed.2d 62. But even if we accept taxpayer's assertion that his personal credit standing was a condition essential to Meredith Motor's continued financing, we could not agree with his ultimate contention.

To qualify the loss as a business bad debt under section 166, the taxpayer had to show that it was,

"(A) a debt created or acquired (as the case may be) in connection with a taxpayer's trade or business of the taxpayer; or

"(B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business." Int.Rev.Code of 1954, § 166(d)(2).

Unless the debt was a business debt when created—a characterization we will answer later—taxpayer's contention must be that since he had to pay the debt to the finance company to maintain his personal credit standing, it is to be regarded as a business debt under subsection B. But in talking about motive for the payment, instead of for the incurrence of the debt, taxpayer is speaking of an event as to which he admittedly had no choice.[2] To say that a payment which is unavoidable has a "dominant [business] motive" and hence is to be regarded as a business debt because of collateral consequences of nonpayment is to confuse substance with tangential result.

The reality of the situation is that the loss from the worthlessness of the debt was incurred as a result of the act of the defendant in 1961 in undertaking the obligation. The business or nonbusiness quality of the loss was not changed because taxpayer in 1964 decided to fulfill the already vested obligation voluntarily. If taxpayer did not make the guarantee originally as a business obligation, it did not become such by the mere fact that his paying in cash, instead of by distraint of a lawsuit, may have avoided business complications. The fallacy of emphazing the circumstances of payment instead of those surrounding the incurring of the loss may be illustrated in simple terms by considering an individual whose business success depends on his personal credit rating, and who says that since nonpayment of his personal bills would injure his credit, paying them is a business expense. However attractive, this is not a viable proposition.

Nor, to go beyond taxpayer's brief, do we see any question as to the proper characterization of the transaction viewed as of 1961. As a granting of credit, taxpayer's guarantee could be considered a loan, as the court properly

---

2. The "forced to honor" language previously quoted from his brief paraphrased taxpayer's testimony, "I had to cover it, anyway. I had no choice."

charged the jury. It was not, however, a business loan within the meaning of section 166. In 1959, before acquiring all of its stock, taxpayer received wages from Pease Motors. But after that, payments to him were treated as repayments on account of his cash loans. The dominant motive in keeping Pease alive could not be seen as protecting taxpayer's source of wages. Rather, it was directed toward preserving or recovering what, whether viewed as a purchase of stock or as a loan, was in the nature of an investment, as taxpayer made clear in explaining his later loans to Pease. When Pease Motors was obliged to borrow more money, "It was a matter of I had lent somebody some money, and in order to protect the money that I had lent him in the first place, I put some more in, and it became this way." "I loaned the corporation money to keep it alive and in the hopes that I would be able to get it back." This same purpose applied to the guarantee. "I signed it so that I could get—so that I could keep my proper finance. Otherwise, I would have lost the whole picture right then and there."

The court charged the jury as follows.

"Now, ask yourself several questions. One, was the debt incurred approximately related to the taxpayer's trade or business? Did it have anything closely connected? Was it closely connected to the taxpayer's trade or business?

"Ask yourself this question: what was Mr. French's dominant motivation in making the guarantee? Was it to protect his investment in Pease Motors, or was it to further and protect his own trade or business, which I am instructing you was that of an automobile dealer in Meredith, as an employee of Meredith Motors, Inc.? Or, to put it another way, was Mr. French operating Pease Motors as an investment or was it in fact part of his own trade or business?"

On the record, however, taxpayer's "dominant motivation in making the guarantee" could not have been "to further and protect his own trade or business . . . of an automobile dealer in Meredith Motors." No meaningful connection, even collaterally, between the guarantee and his trade or business at Meredith Motors appears until, in 1964, taxpayer envisaged consequences to Meredith Motors that would attend his default in payment. Nor can taxpayer's rendering management services to Pease itself be considered his trade or business, since it was done primarily to protect or enhance his investment rather than to earn a salary. Whipple v. Commissioner, 1963, 373 U.S. 193, 202, 83 S. Ct. 1168, 10 L.Ed.2d 288. It was none the less so because, unlike Whipple, taxpayer owned all of the company stock. In short, on his own view of the facts it could not be found that the guarantee-produced bad debt was a business debt within section 166.

The judgment of the District Court is reversed, and judgment is ordered for the defendant.