PIETRO A. LUSZKO and INGRID C. LUSZKO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Luszko v. Commissioner
Docket No. 3873-78.
United States Tax Court
T.C. Memo 1981-500; 1981 Tax Ct. Memo LEXIS 235; 42 T.C.M. (CCH) 1048; T.C.M. (RIA) 81500; September 14, 1981. Pietro A. Luszko and Ingrid C. Luszko, pro se. Donald T. Rocen, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined a deficiency in petitioner's federal income tax *236 for the taxable year 1975 in the amount of $ 1,873.58. The sole issue determined herein is whether petitioners are entitled to a business bad debt deduction in connection with their loan to a real estate development corporation. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. The stipulation of facts and the exhibits attached thereto are hereby incorporated by this reference. Pietro A. Luszko and Ingrid C. Luszko (hereinafter "petitioners"), resided in Littleton, Colorado, at the time of filing their 1975 return. During the taxable year 1975, and for five years prior thereto, petitioners owned and managed rental properties. With respect to these properties, the relevant transactions and occurrences prior to 1975 are as follows: (1) in 1970, petitioners purchased two four-plex properties comprised of eight rental units; (2) in 1971, petitioners purchased a townhouse which served as their residence for 18 months after which time it was converted into a rental property; (3) in 1971, petitioner Ingrid Lusko began studying for her real estate license at the Dick Jones Real Estate School in Denver. Petitioner received *237 her license in 1971. This license enabled her to function knowledgeably with respect to the acquisition and operation of real estate; to avoid and reduce real estate agency fees and broker commissions; and to gain access to professional trade journals; (4) in 1973, petitioners purchased a home as their permanent residence; (5) during these years, petitioners performed virtually all of the work necessary to the ownership and management of the rental facilities, including maintenance and cleaning, bookkeeping, tax preparations, advertising, contracting for major repairs, purchasing of furniture and materials and some agency duties. These activities required an average of 10-20 hours per week and an additional 36-40 hours per month; and (6) petitioners maintained a separate trust account and savings account for money relating to the rental properties. In 1973, petitioner Pietro Luszko encountered V. N. Jacobsen (hereinafter "Jacobsen") in a restaurant. Jacobsen was the president and sole shareholder of Family Heritage, Inc., d/b/a Family Heritage Land, Inc. (hereinafter "Family Heritage"). Family Heritage had undertaken to develop a parcel of land of approximately 1,000 acres *238 and had blueprints which included plans for gutters, roads, sidewalks, condominiums, tennis courts, an 18-hole golf course, a club house and a ski area. Family Heritage needed to raise $ 10,000 for this project within two or three days, and Jacobsen inquired of petitioner Pietro Lusko about the possibility of a loan for that amount. Petitioners obtained $ 5,000 loans from two Denver banks and entered into the loan transaction with Family Heritage whereby petitioners lent Family Heritage $ 10,000 in exchange for a one-year, one percent per annum $ 10,000 promissory note dated July 6, 1973 (the "promissory note") and, in lieu of additional interest, the deed to a 2.2-acre lot cut out of the 1,000-acre parcel. Petitioners took out $ 10,000 worth of title insurance on the 2.2-acre lot. In June, 1974, Jacobsen advised petitioners that Family Heritage was unable to pay the matured note. Jacobsen thereafter went with petitioner Pietro Luszko to the two banks with which Luszko had made personal loans the previous July, where Luszko made arrangements to put the banks' notes on an installment basis. At that time, Jacobsen agreed that Family Heritage would make installment payments *239 to petitioners until the principal amounts plus interest on the $ 5,000 loans from the banks had been satisfied. Family Heritage thereafter made payments to petitioners according to the extension agreement from August 7, 1974 through December, 1974, totaling $ 1,209.09. On December 10, 1975, the District Court of the Fourteenth Judicial District in and for the County of Grand and State of Colorado concluded that Family Heritage was in default on the promissory note and entered a judgment in favor of the petitioners against Family Heritage in the amount of $ 11,002.76. [1] The deed to the 2.2-acre lot was not an issue in that proceeding. In 1975, petitioner Pietro Luszko was employed as a manufacturers' representative for Genesis *240 One Computer Corporation, and received remuneration therefrom in the form of commissions for sales. Pietro Luszko's duties therewith required approximately 30 hours per week. On their 1975 return, petitioners attached a wage and tax statement issued to Pietro Lusako indicating wages, tips and other compensation from Genesis One Computer Corporation for the taxable year 1975 in the amount of $ 29,143.83. Petitioners attached Form 4831, Rental Income, indicating expenses in the amount of $ 15,374.63 and income in the amount of $ 19,366.90 with respect to their rental properties. Petitioners also attached Schedule E indicating a business bad debt deduction of $ 8,790.91 with respect to the 1973 loan transaction with Family Heritage. On Schedule D, petitioners reported capital losses of $ 888. By statutory notice, respondent disallowed the business bad debt deduction and instead accorded the bad debt nonbusiness capital loss treatment. Sometime subsequent to 1975, petitioners were disvorced. In 1979, pursuant to the property settlement decree, petitioners sold the deed to the 2.2-acre tract to Jacobsen for $ 12,500. OPINION Petitioners, husband and wife during the relevant *241 taxable year, ask this Court to find that respondent erred in disallowing a deduction for a business bad debt in connection with a transaction entered into with and defaulted upon by Family Heritage. The sole issue to be determined herein is whether the debt was sufficiently related to a trade or business in which petitioners were engaged to qualify under section 166 [2] as a business bad debt. Section 166(a)(1) provides as a general rule that "there shall be allowed as a deduction any debt which becomes worthless within the taxable year." Crucial to this case, however, is the section 166(d) limitation to the general rule, which provides that section 166(a) does not apply to nonbusiness bad debts, and that the deduction of nonbusiness had debts be accorded instead short-term capital loss treatment. The statutory definition of "nonbusiness debt" [3] is of limited help in making the distinction between business and nonbusiness debt. Rather, the distinction engages terms of art which must be analyzed on a factual, *242 case by case basis. The Supreme Court has allowed the section 166(d) limitation the full sweep of its broad language. In Whipple v. Commissioner, 373 U.S. 193 (1963), the Supreme Court held that a debt arising out of an investment was a nonbusiness debt within section 166(d). Thus, since Whipple, the most frequently litigated issue with respect to the section 166(d) limitation has been, as in the present case, whether a debt has been incurred by a Whipple-type investment activity (accorded short-term capital loss) or in proximate relation to a trade or business (accorded full deduction in the taxable year in which the debt becomes worthless), as represented by the "integrally related to regular business functions" test announced in Corn Products Refining Co. v. Commissioner, 350 U.S. 46 (1955). *243 In United States v. Generes, 405 U.S. 93 (1972), the Supreme Court addressed the tension between the Whipple and Corn Products tests and held that in order to avoid the section 166(d) limitation, the taxpayer's business, as opposed to investment, motive in making a loan must be the "dominant" and not merely a "significant" factor. See also Smith v. Commissioner, 60 T.C. 316 (1973); French v. United States, 487 F.2d 1246 (1st Cir. 1973). In light of the Supreme Court precedent, the petitioners herein must establish that their dominant motive for making a loan to Family Heritage was integrally related to the regular business functions of a trade or business in which they were engaged. On the facts presented, we are convinced that petitioners were not in the trade or business of lending money, investment brokerage or land development. Nor did the parties to the loan contemplate that petitioners were to be joint venturers, employees, promoters, executives or financers of Family Heritage or the land development scheme. However, we conclude, the respondent does not contest, that petitioners were in the business of owning *244 and managing rental property. Although the Supreme Court in Higgins v. Commissioner, 312 U.S. 212 (1941), held that the ownership and management of stocks and bonds does not constitute a trade or business within the meaning of section 162, this Court has subsequently repeatedly distinguished, from Higgins and the line of cases proceeding therefrom, the ownership and management of rental properties and held that the ownership and management of even a single piece of rental property may constitute a trade or business within the meaning of section 162. See Curphey v. Commissioner, 73 T.C. 766 (1980), and the cases cited therein at 774. In the instant case, we are convinced that petitioners' activities with respect to the ownership and management of rental properties were sufficiently systematic, continuous and comprehensive to find that petitioners were in the business of owning and managing rental properties. Concededly the acquisition of additional rental properties can be sufficiently integral to petitioners' rental property business to satisfy Corn Products, supra. However, petitioners have failed to submit evidence to *245 provide the requisite nexus between their loan to Family Heritage and the acquisition of a rental property. Petitioners testified that they would not have made the loan had not Family Heritage honored petitioners' insistence that the 2.2 acre lot be deeded in lieu of additional interest. Petitioners testified that they had acquired blueprints of A-frame type single family and duplex structures in anticipation of building a structure on the 2.2 acre lot. Unfortunately, although we found petitioners testimony to be forthright and credible, these facts standing by themselves do not satisfy the "dominant motive" test of United States v. Generes, supra. In Generes, the Supreme Court approved a "cautious and not a freewheeling approach" to the business bad debt question, and applying such an approach here we think petitioners' proof is insufficient to support a dominating connection between the loan and petitioners' rental business. Prior to the consummation of the loan, petitioners conducted no studies with respect to the feasability of constructing a rental facility on the lot. Rather, the loan was proposed, considered and consummated all within a two-or *246 three-day span. On these facts, it is likely that petitioners recognized the loan transaction as a lucrative investment opportunity, and had the fiscal dynamics of sale proven advantageous after subsequent and more thorough investigation, that petitioners would have pursued such a non-rental arrangement. Absent corroborating evidence submitted by petitioners of their definite intent to build a rental property on the 2.2-acre lot, the facts bear out respondent's determination that petitioners' dominant motive in entering into the loan was investment oriented and not integrally related to their business of owning and managing rental properties. Whipple v. Commissioner, supra; United States v. Generes, supra. Petitioners have therefore failed to meet their burden, and respondent's determination in the statutory notice of deficiency therefore must be sustained. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Decision will be entered for the respondent. Footnotes
1. The State District Court found as a fact "[t]hat a debt remains due and owing by Family Heritage, Inc., d/b/a Family Heritage Land, Inc., to the Plaintiffs [petitioners] on the aforesaid debt the sum of $ 11,002.76 at the present time." This figure apparently represents the remaining principal and interest which Family Heritage owed as a result of the installment payment arrangement Jacobsen subsequently entered into with petitioners.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, except as otherwise specifically indicated.↩
3. Section 166(d)(2) provides as follows: (2) Nonbusiness Debt Defined.--For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than-- (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthelessness of which is incurred in the taxpayer's trade or business.↩