Edward A. Brecher and Harriet Brecher v. Commissioner. Philip C. and Helen R. Brecher v. Commissioner.
Brecher v. Commissioner
Docket Nos. 84967, 84968.
United States Tax Court
T.C. Memo 1962-154; 1962 Tax Ct. Memo LEXIS 153; 21 T.C.M. (CCH) 851; T.C.M. (RIA) 62154; June 26, 1962
John E. Mahoney, Esq., 16 Court St., Brooklyn, N. Y., for the petitioners. Lionel Savadove, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency income tax for 1956 of $2,353.53 against Edward and Harriet and one of $3,029.25 for 1956 against Philip and Helen. The only issue in each case is whether the Commissioner erred in disallowing a deduction of $7,492.65 representing the payment in 1956 of an assessment for unpaid withholding and employment taxes incurred by Preston Manufacturing Company, Inc., of which Edward and Philip *154 were officers. Findings of Fact Edward A. and Harriet Brecher were husband and wife. Philip C. and Helen R. Brecher were husband and wife. Each couple filed a joint cash basis return for 1956 with the district director of internal revenue at Brooklyn, New York. A deduction of $7,492.65 was taken on each return and was disallowed by the Commissioner in determining the deficiencies because "it does not constitute an allowable deduction under any provision of the Internal Revenue Code of 1954." A stipulation of facts filed by the parties is incorporated herein by this reference. It contains, inter alia, the following: Edward A. Brecher and Philip C. Brecher were officers, and each owned 25 percent of the stock of Preston Manufacturing Company, Inc., a West Virginia corporation (hereinafter called Preston), formerly doing business as Eagle Woodworking Company, during the years in which certain unpaid withholding and employment taxes were incurred by Preston. On April 28, 1950, the Collector of Internal Revenue for the District of West Virigina filed with Ole E. Wyckoff, Referee in Bankruptcy for the Northern District of West Virginia, a proof of claim in Bankruptcy No. 3603-E *155 against Preston, in the total sum of $29,451.61, including withholding and employment taxes, together with interest and penalty thereon, in the sum of $19,451.61, for the years in which Edward A. Brecher and Philip C. Brecher were officers and 25 percent stockholders in Preston. In 1955, in accordance with established procedures, an assessment was made against Edward A. Brecher and Philip C. Brecher under Section 6672 of the Internal Revenue Code of 1954, or corresponding sections of the Internal Revenue Code of 1939, for the trust fund portion of unpaid withholding and employment taxes of Preston incurred during the years in which Edward A. Brecher and Philip C. Brecher were officers and 25 percent stockholders, and as a result of the said assessment, in 1956 Edward A. Brecher and Philip C. Brecher each paid the sum of $7,492.65. Edward was president and a director of Preston and Philip was secretary or treasurer of Preston at all time material hereto. They are brothers. They supplied the financing for Preston. Edward visited its plant regularly and saw its books and records. The Brechers were also partners during that period in the sale of rugs and carpets *156 in Brooklyn, New York, and, beginning prior to 1942, were installing linoleum in defense housing, including linoleum in sink tops. The sink top work presented difficulties and they set up a small factory in their rug warehouse to manufacture and supply them with sink tops. They did this with the aid of George Portman, experienced in such work, and Philip's brother-in-law, Murray Rock, who "ran the office." They called this activity "Rock-Made." Later this manufacturing included kitchen cabinets with the aid of Philip Segal, experienced in their manufacture. The kitchen cabinet business was called "Eagle Wood-working." The sink top and kitchen cabinet business was later moved to some place in West Virginia to avoid violations of building use restrictions. Preston was incorporated in 1947 and took over the manufacturing business in West Virginia. The Brechers, Portman and Rock bought Segal's interest. Thereafter each owned a 25 percent interest in Preston and Portman and Rock went to West Virginia and handled the day-to-day activities of the business. What offices were held by Portman and Rock is not shown by the record. Any two of the four owners could sign checks but generally Portman *157 and Rock signed checks. Preston went into bankruptcy in 1950. Prior thereto Edward "knew from time to time that they had not been paying their taxes, probably toward the end, and instructed them both [Portman and Rock] to pay the taxes." The record does not show that Philip did not know that the withholding and employment taxes had not been paid by Preston. Opinion MURDOCK, Judge: The petitioners argue that they were not "responsible officers" and therefore not liable under section 6671 of the Internal Revenue Code of 1954 and similar provisions of the Internal Revenue Code of 1939. The proper way to have litigated that question would have been to file a claim and sue for refund in some court other than this one. Cf. McAllister v. Dudley, 148 Fed. Supp. 548. Apparently the petitioners never pursued any such course. The only question here is whether their payments of the amounts gave rise to deductions from income. How the absence of liability on their parts for the payments which they made would create rights to deductions here not otherwise theirs, is not at all clear. But, in any event, they have failed to prove that they were not *158 liable under the law. The only factual difference between this case and Benjamin T. Smith, 34 T.C. 1100, affirmed per curiam 294 F. 2d 957, is that Smith was a sole stockholder whereas Edward and Philip each own 25 percent of the stock of Preston. Philip was present at the trial but did not testify. Edward was the only witness. He was vague as to entities, acts, places, dates, duties and other details which might have been helpful. He and his brother organized and financed those businesses and were principally responsible for the existence and operation of Preston. They held the most important offices in the corporation and kept in close touch with its affairs. Edward admitted that he knew, while Preston was still operating, that it was not paying taxes which it owed. He could not say whether or not he had signed its tax returns. The record does not show what Philip knew or did about the withholding and employment taxes. Certainly the evidence does not show that the Commissioner erred. Decision will be entered for the respondent.