ALVIN E. MEDEIROS, JR., AND CLARA T. MEDEIROS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4145–79.    Filed December 14, 1981.

*Larry L. Myers*, for the petitioner.
*Lawrence G. Becker*, for the respondent.

DRENNEN, *Judge*: Respondent determined deficiencies in petitioners' income taxes and additions to tax for the following years and in the following amounts:

| Year | Deficiency | Addition to tax | |
|---|---|---|---|
| | | *Sec. 6651(a)* | *Sec. 6653(a)* |
| 1972 | $21,498.36 | $5,374.59 | $1,580.92 |
| 1973 | 13,599.90 | 3,399.98 | 1,398.55 |
| 1974 | 13,698.33 | 3,424.58 | 1,320.51 |

Petitioners having conceded all other adjustments made in the notice of deficiency, including the additions to tax, the only issue for decision is whether petitioner is entitled to a

deduction for the year 1972 in the amount of $11,290.65 for the 100-percent penalty tax imposed by section 6672, I.R.C. 1954 (hereinafter referred to as penalty). The amount of $11,290.65 assessed against and paid by petitioners in 1972, and claimed by them as a deduction on their return, consisted of $9,673.69 of penalty and $1,616.96 of interest thereon. Respondent has allowed petitioners a deduction for the interest in the notice of deficiency.

## FINDINGS OF FACT

The stipulated facts are incorporated herein by reference.

Petitioners are husband and wife and, at the time their petition was filed herein, resided in Honolulu, Hawaii. They filed joint Federal income tax returns for the years 1972, 1973, and 1974 with the Director, Internal Revenue Service, Fresno, Calif.

In April 1968 and continuing to the date of trial, Alvin Medeiros (hereinafter petitioner) was president of Honolulu Transport & Warehouse Corp., a Hawaiian corporation, engaged in warehousing and trucking since 1957.

Red Line Transfer Co. (hereinafter Red Line) was a Hawaiian corporation engaged in the trucking business for many years. In April 1968, Don Medeiros (unrelated to petitioners) was president and general manager of Red Line and ran the day-to-day operations of the business.

In early 1968, petitioner entered into a conditional oral purchase agreement with Don Medeiros and others to acquire their stock in/or assets of Red Line. The sale was conditioned on (1) Don Medeiros' obtaining approval of the State of Hawaii Public Utilities Commission (PUC) for the transfer of ownership and operation of Red Line to petitioner or his alternative; (2) petitioner's paying $10,000 to Red Line immediately for payment of outstanding bills of Red Line; and (3) petitioner's purchasing the stock of Red Line from its shareholders for $1 per share.

In April 1968, petitioner transferred $10,000 into a new checking account at Liberty Bank in Honolulu established in the name of Red Line, out of which was to be paid certain outstanding gasoline and repair bills, and lease rental to Victoria Ward, for Red Line. Petitioner signed checks on the Liberty Bank account from time to time at the request of Don

Medeiros to pay bills or make partial payments on bills of Red Line. Petitioner did not know the financial condition of Red Line, and Don Medieros did not discuss it with petitioner. Petitioner did not pay any of Red Line's bills directly to the creditors.

Don Medeiros collected the moneys received from Red Line's customers and deposited a portion of those moneys in the Liberty Bank account and the remainder in a separate existing account of Red Line's in the Hawaii National Bank. Petitioner did not have access to this account and did not know how much was in the account. Don Medeiros paid Red Line's payroll with checks on this account. No payroll checks were drawn on the Liberty Bank account although occasionally checks were drawn on the Liberty Bank account and deposited in the Hawaii National Bank account.

Petitioner was never an officer or director of Red Line and had nothing to do with the operations, the bookkeeping, or the financial affairs of Red Line. He had no knowledge that Red Line was not paying to the Government employee and withholding taxes until Red Line discontinued business. Shortly before Red Line discontinued business, however, petitioner was directed by Don Medeiros to make out a check to the Internal Revenue Service for $500 for withholding taxes for prior periods.

In September 1968, Don Medeiros told petitioner that the PUC would not approve the transfer of Red Line's business and license to petitioner. Shortly thereafter, because Red Line failed to pay arrearages in union dues, its union employees walked off their jobs. The corporation then ceased all further operations. Don Medeiros then alone withdrew the remaining funds out of the Liberty Bank account. Petitioner did not buy any of the stock of Red Line.

From April 1968 through September 30, 1968, and at times prior thereto, Red Line failed to withhold and pay over to the Government a substantial portion of the employment tax and income tax withholdings required by law.

On April 25, 1969, the Internal Revenue Service made an assessment against petitioner Alvin Medeiros of the penalty imposed by section 6672 of the Internal Revenue Code of 1954

(often referred to as the 100% penalty tax) due to his relation with Red Line.[1] The assessment was in the amount of $9,673.69 for the period June 30, 1968, to September 30, 1968. Petitioner "rejected" the assessment. On March 10, 1972, a notice that their personal residence had been seized by the IRS for nonpayment of the April 25, 1969, assessment was mailed to petitioners. On March 25, 1972, revenue agents posted numerous notices of seizure on petitioners' residence, indicating that the house was to be sold in 3 days if the assessment was not paid in full within that time.

On March 28, 1972, petitioner made a payment to the IRS of $11,290.65. This payment represented the payment of the assessed penalty, $9,673.69, plus interest accruing from the date of assessment to the date of payment, totaling $1,616.96.

Petitioners made no effort to resist the collection of the assessment nor did they file a claim for refund of the amount paid.

Petitioners deducted the $11,290.65 on Schedule C of their 1972 income tax return as "taxes on business and business property-Fed. tax lien." In the notice of deficiency, respondent allowed an additional deduction for "interest on Federal Tax Lien" in the amount of $1,616.96 and disallowed the deduction of $11,290.65 for Federal tax lien.[2]

### OPINION

Petitioners argue that they were never formally adjudged liable for the penalty provided by section 6672(a)[3] of the Code and are not liable therefor, and that they are entitled to a deduction for the amount paid as a loss under section 165(a) as a loss incurred in petitioner's trade or business, section

---

[1]The record contains no explanation of why the IRS made this assessment against petitioner. There is a hint that there might have been some confusion about which Medeiros ran Red Line.

[2]At trial and on brief, respondent objected to any evidence or findings of fact with regard to the details leading up to the assessment on the grounds of relevancy. In light of the conclusion reached in this opinion, respondent's objections may have been well taken. However, we have made findings with respect to those facts not only to provide a foundation for petitioners' arguments but also to emphasize how unfortunate petitioners were in this adventure and how unfortunate it was that they did not seek legal advice at the time of the assessment and thereafter.

[3]All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

165(c)(1). Respondent argues that this Court has no jurisdiction to determine petitioner's liability for the penalty assessed and that the amount paid is not deductible under any section of the Code and is specifically nondeductible by virtue of section 162(f) which provides that "No deduction shall be allowed under subsection (a) for any fine or similar penalty paid to a government for the violation of any law." Since we agree with both of respondent's arguments, we must reluctantly hold for respondent.[4]

The Tax Court is a court of limited jurisdiction, having only such jurisdiction as is provided in section 7442 of the Code. This includes Federal income, estate, and gift taxes which are subject to the deficiency notice requirements of sections 6212(a) and 6213(a). The deficiency notice requirements set forth in those two sections are limited to the taxes imposed by subtitle A (income taxes) and subtitle B (estate and gift taxes), and chapters 41 through 45 (certain excise taxes). *Wilt v. Commissioner*, 60 T.C. 977 (1973). Rule 13, Rules of Practice and Procedure, United States Tax Court, provides—

Except in actions for declaratory judgment or for disclosure * * * the jurisdiction of the Court depends (1) in a case commenced in the Court by a taxpayer, upon the issuance by the Commissioner of a notice of deficiency in income, gift or estate tax or in the taxes under Chapter 41, 42, 43, or 44 of the Code (relating to excise taxes on certain organizations and persons dealing with them) or in the tax under Chapter 45 (relating to the windfall profits tax) or in any other taxes which are the subject of the issuance of a notice of deficiency by the Commissioner; and (2) in a case commenced in the Court by a transferee or fiduciary, upon the issuance by the Commissioner of a notice of liability to the transferee or fiduciary. See Code Sections 6212, 6213, and 6901.

Section 6212 of the Code provides:

If the Secretary determines that there is a deficiency in respect of any tax imposed by subtitle A or B or chapter 41, 42, 43, 44, or 45, he is authorized to send notice of deficiency to the taxpayer * * *

Section 6213 provides that within 90 (or 150) days after the

---

[4]Petitioners not only lost the $10,000 they turned over to Red Line, which they apparently did not pursue or claim as an income tax loss, but they also paid out $11,290.65 as a penalty and interest for which they may not have been liable and are now being denied a deduction therefor. Of course, their proper remedy to test their liability for the penalty was to file a claim for refund and, if denied, to sue for refund in some court other than the Tax Court. As discussed herein, this Court has no jurisdiction to determine their liability for the penalty.

notice of deficiency authorized in section 6212 is mailed, the taxpayer may file a petition in the Tax Court for a redetermination of the deficiency. No assessment of a deficiency in respect of the taxes mentioned in section 6212 may be made until such notice has been mailed to the taxpayer, nor until the expiration of such 90-(or 150-) day period, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court becomes final.

The issuance of a notice of deficiency or notice of liability by the Commissioner is a condition precedent to Tax Court jurisdiction, except in certain declaratory judgment and disclosure actions. See titles XXI and XXII, Tax Court Rules of Practice and Procedure. *Wilt v. Commissioner, supra; DaBoul v. Commissioner*, 429 F.2d 38 (9th Cir. 1970). Under section 6212, the Secretary (or Commissioner) is authorized to issue notices of deficiency only with respect to taxes imposed by subtitles A or B or chapters 41 through 45. The penalty here involved is imposed by sections 6671 and 6672 with respect to taxes imposed by subtitle C, employment taxes. There is no requirement that a notice of deficiency be issued before the assessment of taxes imposed by subtitle C. See *Shaw v. United States*, 331 F.2d 493 (9th Cir. 1964); *Enochs* v. *Green*, 270 F.2d 558 (5th Cir. 1959). Since a notice of deficiency is a condition precedent to Tax Court jurisdiction, we conclude that we do not have jurisdiction to determine petitioner's liability for the penalty. *Wilt v. Commissioner, supra.*[5]

But while this Court has no jurisdiction to determine petitioners' liability for the penalty, we do have jurisdiction to determine whether petitioners may deduct the penalty paid.

Respondent contends that section 162(f) bars deduction of the penalty. Petitioners' principal argument to the contrary seems to be that they were not liable for the penalty and therefore deduction of it is not barred by section 162(f). This argument must fall of its own weight because their liability for the tax cannot be considered by this Court, and petitioners

---

[5]Compare *Brecher v. Commissioner*, T.C. Memo. 1962–154, *DiLucenti v. Commissioner*, T.C. Memo. 1980–208, wherein this Court pointed out that if the taxpayer, against whom the 100- percent penalty was assessed, wanted to test his liability for the penalty, the proper procedure would be to pay the penalty and sue for refund in some court other than the Tax Court. Nevertheless, in *Brecher*, the Court went on to conclude that the taxpayers had failed to prove that they were not liable for the penalty under the law.

have made no effort to have it considered in a refund proceeding. In *United States v. Molitor*, 337 F.2d 917 (9th Cir. 1964), it was held that the presumption of administrative regularity arose from assessment of the penalty, and the assessment was prima facie proof of the taxpayer's liability for the penalty, if unassailed. Since petitioners did not contest the assessment in the proper court and we have no jurisdiction to determine its validity here, we must accept the assessment as prima facie proof of petitioners' liability for the penalty.

Section 162(a) allows deductions for ordinary and necessary business expenses paid or incurred during the taxable year in carrying on any trade or business. However, section 162(f) provides that no deduction shall be allowed *under subsection (a)* for any fine or similar penalty paid to a government for the violation of any law. A perusal of the legislative history of section 162(f) and of section 1.162–21(b)(1)(ii), Income Tax Regs.,[6] makes it clear that Congress intended section 162(f) to prevent the deduction of the assessable penalties imposed by subchapter B of chapter 68 of the Code, of which sections 6671 and 6672 are a part. See *Reid v. Commissioner*, T.C. Memo. 1981–677, filed November 14, 1981, for a discussion of the legislative history. It follows that, under section 162(f), petitioners are not permitted to deduct under section 162(a),[7] the section 6672 penalty paid by Alvin. *Patton v. Commissioner*, 71 T.C. 389 (1978). See *Arrigoni v. Commissioner*, 73 T.C. 792, 801 n. 9 (1980).

Petitioners argue that the amount of the penalty paid is deductible as a loss under section 165(c)(1). Section 165(a) allows as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. Subsection (c), however, limits the deduction allowed under subsection (a), in the case of individuals, to certain types of losses. Subsection (c)(1) permits a deduction for "losses in-

---

[6]While sec. 1.162–21(b)(1)(ii), Income Tax Regs., was not adopted until July 5, 1975, T.D. 7366, 1975–2 C.B. 64, the regulation has retroactive applicability. See *Southern Pacific Transportation Co. v. Commissioner*, 75 T.C. 497, 649 n. 174 (1980).

[7]Petitioners do not specifically rely on sec. 162(a) for allowance of the deduction except on reply brief. However, we think it is important to consider whether the penalty is deductible under sec. 162(a) because we cannot ascribe to Congress the intent, in enacting sec. 162(f), to disallow the deduction of this penalty under sec. 162(a) but to allow it as a loss deduction under sec. 165(a).

curred in a trade or business." Respondent argues that it would be a frustration of public policy to allow deduction of the penalty paid under section 165(c)(1) or any other section of the Code, relying primarily on *Smith v. Commissioner*, 34 T.C. 1100 (1960), affd. per curiam 294 F.2d 957 (5th Cir. 1961).

Deductions are a matter of legislative grace, and petitioners must prove that they are entitled to the deduction claimed under a specific provision in the Code. Whether or not allowance of a deduction here would frustrate public policy, we cannot agree that the payment of the penalty by petitioner was a loss incurred in his trade or business. The business that gave rise to the obligation to withhold and pay over to the Government the employment taxes was that of Red Line, a corporation, and petitioner cannot claim it as a part of his business. Furthermore, petitioner was not an officer, director, employee, or stockholder of Red Line so the penalty was not related to his business of being an employee. In fact, in the case cited by petitioner in which a deduction was allowed for the section 6672(a) penalty, or its predecessor, *Stamos v. Commissioner*, 22 T.C. 885 (1954), the deduction was allowed as a nonbusiness loss. The distinguishment of the *Stamos* case in *Smith v. Commissioner, supra* at 1107, is equally applicable here.

We also agree with respondent that a deduction of the penalty as a loss under section 165(c)(1) is not allowable because to allow it would frustrate public policy.[8] *Smith v. Commissioner, supra,* is precisely in point and held that a deduction for the penalty imposed by the predecessor of section 6672(a) was not deductible either as a loss or a bad debt because "the allowance thereof would frustrate public policy," 34 T.C. at 1103. See also *Arrigoni v. Commissioner, supra* at 801 n. 9, and the discussion of section 162(f) and violation of public policy in *Southern Pacific Transportation Co. v. Commissioner, supra* at 643–654.[9]

---

[8]There is some question whether the public policy doctrine retains any vitality since the enactment of sec. 162(f). If sec. 162(f) was intended to supplant the public policy doctrine, in all likelihood it would disallow deductions under sec. 165(c)(1) as well as sec. 162(a) since both involve an expenditure incurred in a trade or business.

[9]It could be argued that there would be no violation of public policy to allow these

We conclude that petitioners may not deduct the penalty imposed by section 6672(a).

*Decision will be entered for the respondent.*

---

particular taxpayers under these particular circumstances to deduct the penalty they paid. However, for reasons stated above, we must assume that petitioner was liable for the penalty imposed by sec. 6672(a), which requires willful conduct.