MORRIS MISBIN AND DOROTHY A. MISBIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Misbin v. Commissioner
Docket No. 27953-82.
United States Tax Court
T.C. Memo 1985-285; 1985 Tax Ct. Memo LEXIS 348; 50 T.C.M. (CCH) 131; T.C.M. (RIA) 85285; June 13, 1985. Steven J. Halpern, for the petitioners. Howard Rosenblatt, for the respondent. GERBER MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent determined deficiencies in petitioners' joint Federal income taxes for calendar years 1978 and 1979 in the amounts of $31,104.54 and $16,749.25, respectively. The issue presented for consideration is whether a shareholder-officer of a corporation may deduct amounts paid with respect to the 100-percent assessment under section 6672[1] because the corporation failed to remit the withholding and employment taxes withheld. *350 FINDINGS OF FACT All of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners, Morris Misbin and Dorothy A. Misbin, resided in San Juan Capistrano, California, at the time they filed the petition in this case. Petitioners filed their 1978 and 1979 joint Federal income tax returns with the Internal Revenue Service Center in Fresno, California.Petitioner used in the singular shall refer to Morris Misbin. During 1969 and 1970, petitioner was Vice President and a 50-percent shareholder of Fami, Inc. (Fami), a California corporation engaged primarily in engineering work. [2] Petitioner was also President and a one-third shareholder of Marina View Heights Development Company (Marina). [3] Marina entered into an agreement with Glendale Federal Savings and Loan (Glendale) to purchase certain land in San Juan Capistrano. Marina engaged Fami to perform certain excavation work on the land. *351 As part of the agreement between Marina and Glendale, Glendale insisted and Marina's key executives agreed that the loan disbursements to Marina should be kept to a minimum during the operation with the balance to be paid at the project's completion. The balance included all required payroll taxes. Before the excavation work was completed, Glendale filed a notice of default against Marina on June 24, 1970, and impounded over $1 million in an account allocated but not yet disbursed to Marina. [4] A portion of this amount included payroll taxes will respect to salaries already disbursed. As a result of this impoundment, both Marina and Fami became incapable of paying their debts. In early 1971, the Internal Revenue Service visited Fami and inquired about Fami's delinquent withholding and employment tax liabilities. Fami's records reflected that Fami was solvent and a creditor of Marina. Petitioner assured the Internal Revenue Service *352 representative that Fami was owed money by Marina, that Marina would pay Fami, and that Fami in turn would pay its withholding and employment tax obligations to the Internal Revenue Service. Petitioner orally assured the representative that he would personally assume the responsibility to see to it that the Internal Revenue Service was paid. On May 20, 1971, the Internal Revenue Service mailed petitioner, as officer of Fami, a Form 2765 (Notice of Proposed Assessment) advising petitioner that a 100-percent penalty assessment pursuant to section 6672 was proposed against him. [5] On February 21, 1972, the Internal Revenue Service mailed petitioner a Statement of Tax Due in the amount of the proposed 100-percent penalty assessment as a result of Fami's unpaid withholding and employment tax obligations. [6]
On April 19, 1972, the Internal Revenue Service *353 sent petitioner, this time as an officer of Marina, a Form 2765 (Notice of Proposed Assessment) advising petitioner that 100-percent penalty assessments pursuant to section 6672 were proposed against him as a result of Marina's unpaid withholding and employment tax obligations. Sometime in April 1972, the Internal Revenue Service recorded the 100-percent penalty assessments with the Orange County Recorder, and on March 3, 1978, the Internal Revenue Service levied on petitioner's personal residence and filed a Notice of Seizure on the residence. Thereafter, petitioner and the Internal Revenue Service extensively negotiated for a mutually agreeable payment schedule to liquidate the 100-percent penalty assessments.Petitioner paid $65,000 in 1978 and $77,367.56 in 1979. Petitioners deducted $115,000 for "legal settlements" on their 1978 Federal income tax return. This $115,000 deduction included $65,000 representing the amount petitioner paid in 1978 as a result of the 100-percent assessments made against him in 1972 with respect to both Fami's and Marina's unpaid withholding and employment tax obligations. No portion of the $65,000 payment represented interest. Petitioners *354 deducted $77,367.56 on their 1979 Federal income tax return. This $77,367.56 deduction included $32,847.48 representing the amount petitioner paid in 1979 as the result of the same 100-percent assessments made against him in 1972. [7] Respondent, in his statutory notice of deficiency, disallowed petitioners' deductions of $65,000 in 1978 and $32,847.48 in 1979 but allowed deductions for the amount of interest paid. Because respondent allowed the deductions for interest, the only issue to be resolved is whether petitioners may deduct the amounts paid with respect to the 100-percent assessments under section 6672. OPINION Petitioner argues that he was never formally adjudged liable for the penalty under section 6672 and therefore he did not make payment to settle any potential personal liability for the penalty.We held in Medeiros v. Commissioner,77 T.C. 1255, 1258-1260 (1981), that this Court does not have jurisdiction to determine *355 petitioner's liability for the penalty assessed. [8] This Court does have jurisdiction, however, to determine whether petitioner may deduct the penalty paid. Medeiros v.Commissioner,supra at 1260. *356 Respondent contends that section 162(f) bars deduction of the penalty. Petitioner, on the other hand, argues in his opening brief that under the unique circumstances of this case, petitioner's payments should not be considered a nondeductible penalty under section 162(f) because case law exists holding that a payment under section 6672 is really a payment of taxes and not a penalty despite the use of the word penalty in section 6672. [9] All of the cases petitioner cites are distinguishable, however, because they do not deal with the deductibility of the amount paid pursuant to section 6672. Larson v. United States,340 F. Supp. 1197 (E.D. Wis. 1972), addresses whether the liability under section 6672 survives the responsible person's death. The court in Larson held that the liability survived and thus was a debt chargeable against the responsible person's estate. Botta v. Scanlon,314 F.2d 392 (2d Cir. 1963), concerns whether courts may restrain the collection of assessments under section 6672. The court in Botta *357 refused to restrain collection of the assessment under section 6672 stating that it could no more enjoin collection of the assessment than it could enjoin collection of the original or underlying tax because the nature of the penalty imposed, which is an assessment equal to the amount of the tax not paid, shows that section 6672 is simply a means for ensuring that the tax is paid. Botta v. Scanlon,supra at 393-394, and that cases cited therein. Thus, while these cases hold that section 6672 is a means for ensuring that the tax is paid, none of these cases deal with whether the amount paid with respect to section 6672 is deductible. United States v. Sotelo,436 U.S. 268 (1978); Westenberg v.United States,285 F. Supp. 915 (D. Ariz. 1968); and Lynn v.Scanlon,234 F. Supp. 140 (E.D.N.Y. 1964), which petitioner cites, are also distinguishable. These cases deal with the meaning of the word "penalty" under section 6672 in determining whether the debt is dischargeable in bankruptcy. As this Court concluded in Patton v. Commissioner,71 T.C. 389, 390-391 (1978), those cases *358 determining that the debt is not dischargeable in bankruptcy "obviously can have no controlling effect upon the meaning of 'penalty' in section 162(f) which is directed to an entirely different problem." It is well settled that while section 162(a) allows deductions for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, section 162(f) provides that no deduction shall be allowed for any fine or similar penalty paid to a government for the violation of any law. [10] In Patton v. Commissioner,supra at 390-391, we held that the penalty imposed by section 6672 is clearly a penalty for purposes of section 162(f), and, therefore, is not deductible. See also Medeiros v. Commissioner,77 T.C. 1255, 1261 (1981); Uhlenbrock v. Commissioner,67 T.C. 818 (1977); May v. Commissioner65 T.C. 1114 (1976); Smith v.Commissioner,34 T.C. 1100 (1960), affd. per curiam 294 F.2d 957 (5th Cir. 1961). *359 Petitioner recognizes that the cases which have considered the deductibility of section 6672 penalties have all held that the penalties are not deductible. Petitioner attempts to distinguish these cases by stating that the payments made in the instant case should be deductible because to allow the deduction would not violate public policy, [11] the dispositive issue in Smithv. Commissioner,supra at 1103. [12] We disagree. While petitioner argues that it was Glendale's fault that Fami was unable to pay its withholding and employment taxes, the fact remains that petitioner knew that the taxes were not paid to the government which thus led to the assessment against him under section 6672. Nothing in the record tends to show that the public policy has not been violated. To the contrary, the withheld amounts were not remitted to the government, as required by the law. Secs. 3401-3403. *360 Petitioner admits in his reply brief that payments made pursuant to the 100-percent penalty assessment under section 6672 are not deductible. Petitioner argues, however, that he entered into a legally enforceable guaranty agreement and that he is, therefore, entitled to deduct the payments as a bad debt that became uncollectable. Thus, petitioner argues that he is not claiming the deductions on the basis of making penalty payments to the Internal Revenue Service but rather claims the deductions on the basis that when petitioner paid the Internal Revenue Service as a guarantor, an obligation arose from Fami to petitioner to make good on the guaranty. Recognizing that Fami would be unable to pay this guaranty, petitioner reported the debt as worthless on his income tax returns and claimed bad debt deductions. Consequently, petitioner argues that the deductions result from a bad debt owed by Fami to petitioner, and do not result from having paid a penalty to the Internal Revenue Service. Respondent argues that even if petitioner was legally bound as guarantor of the two corporations' withholding and employment tax liabilities, once the 100-percent penalty assessments were made, *361 any payments made pursuant thereto discharged petitioner's own personal liability rather than the corporations' liability. Liability under section 6672 is personal to the officer, employee, or partner against whom it is asserted, and is wholly distinct from, rather than substitutional for, the liability owed by the corporation. Bloom v. Commissioner,272 F.2d 215, 221 (9th Cir. 1959); Smith v. Commissioner,supra at 1104. Therefore, there was no debt created which could form the basis of a bad debt deduction, business or otherwise. Respondent relies on Arrigoni v. Commissioner,73 T.C. 792, 800-801 (1980), wherein we disallowed a bad debt deduction to a shareholder because the 100-percent penalty assessment under section 6672 is distinct from rather than substitutional for the liability of the corporation.[13] This Court in Arrigoni also stated that it would not allow a taxpayer to invoke section 166 to circumvent the prohibition *362 of a deduction under section 162(f). Arrigoni v.Commissioner,supra at 801 n.9. The deductibility of the payments must be treated in a manner consistent with the proper treatment of the underlying obligation. Rude v. Commissioner,48 T.C. 165 (1967). While petitioner attempts to distinguish Arrigoni v.Commissioner,supra, by arguing that it bespeaks the obvious that when a guarantor makes a payment pursuant to his guaranty, the guarantor is making the payment of a personal obligation, we believe Arrigoni v. Commissioner,supra at 798-801, correctly resolves the deductibility question under section 166. Accordingly, petitioner is not allowed to deduct the payments under section *363 166. To reflect the foregoing, Decision will be enteredfor the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years at issue.↩
2. Petitioner and Nofie Famularo owned Fami, Inc., equally. Mr. Famularo was President of Fami. ↩
3. Petitioner, Mr. Reed, and Mr. Holmes equally owned Marina. Mr. Famularo was Vice President of Marina.↩
4. In September 1970, Marina entered Chapter 11 proceedings and was finally adjudicated a bankrupt in 1972. A lawsuit ensued between the parties concerning Glendale's declaration of default. Glendale was finally successful in 1977.↩
5. The Internal Revenue Service mailed the Notice of Proposed Assessment to both petitioner and Mr. Famularo as officers of Fami advising that a 100-percent penalty assessment was proposed against both individuals. ↩
6. he Internal Revenue Service mailed the Statement of Tax Due to both petitioner and Mr. Famularo.↩
7. Respondent allowed petitioners a $44,520.08 deduction for that portion of the $77,367.56 payment representing interest.↩
8. In Medeiros v. Commissioner,77 T.C. 1255, 1260 (1981), Di Lucente v. Commissioner,T.C. Memo. 1980-208, and Brecher v.Commissioner,T.C. Memo. 1962-154, this Court noted that a taxpayer, against whom the 100-percent penalty was assessed, may test his liability for the penalty by paying the penalty and suing for refund in a Federal district court or the Court of Claims. In Medeiros v. Commissioner,supra at 1261, we relied on United States v. Molitor,337 F.2d 917 (9th Cir. 1964), to find that the assessment was prima facie proof of the taxpayer's liability for the penalty. It should be noted, however, that this Court in Brecher further concluded that the taxpayers had failed to prove that they were not liable for the penalty under the law. However, as concluded in Medeiros v. Commissioner,supra at 1260, we lack jurisdiction to determine whether petitioner is liable for the penalty. Consequently, we do not accord any weight to petitioner's argument that petitioner was never adjudged liable, in any type of proceeding, for the penalty imposed under sec. 6672(a) to resolve whether the payments are proscribed by sec. 162(f) under sec. 1.162-21(b)(1)(ii) or (iii), Income Tax Regs.↩
9. Petitioner is his reply brief, however, admits that penalties under section 6672↩ are not deductible.
10. Snedeker v. Commissioner,T.C. Memo. 1983-675 (held penalty imposed by sec. 6672 is clearly a penalty for purposes of sec. 162(f) and not deductible following Patton v. Commissioner,71 T.C. 389 (1978)); Reid v. Commissioner,T.C. Memo. 1981-677 (held penalty under sec. 6672 is not deductible relying on the legislative history of sec. 162(f)); Kolberg v. Commissioner,T.C. Memo. 1965-171 (held penalty under sec. 6672 against responsible officer was not deductible because to allow deduction would frustrate public policy relying on Smith v. Commissioner,34 T.C. 1100 (1960), affd. per curiam 294 F.2d 957 (5th Cir. 1961)); Brecher v. Commissioner,T.C. Memo. 1962-154 (held the Commissioner did not err in asserting penalty under sec. 6672↩ against corporate shareholder and disallowing deduction).
11. There is some question whether the public policy doctrine retains any vitality since the enactment of sec. 162(f). Medeiros v. Commissioner,77 T.C. 1255, 1262↩ n.8 (1981). The well defined public policy is that no person shall be allowed a deduction for failing to comply with the law. Petitioner argues, however, that he had absolutely no control over his plight because petitioner was not responsible for Fami's and Marina's inability to pay their withholding and employment taxes. Petitioner argues that Glendale was responsible by filing a notice of default and impounding over $1 million in an account allocated but not yet disbursed to Marina. Because Glendale impounded the funds, Marina as well as Fami were unable to pay their withholding and employment taxes. 12. While an employee in Stamos v. Commissioner,22 T.C. 885 (1954), was allowed a nonbusiness loss deduction, this Court in Smith v. Commissioner,supra at 1107, distinguished Stamos↩ on the grounds of public policy which we find equally applicable here.
13. In Arrigoni v. Commissioner,73 T.C. 792, 801 n.9 (1980), this Court noted that it would "not permit the taxpayer to transform a nondeductible personal obligation into a deductible corporate debt when to do so would circumvent the effectiveness of sec. 6672. But see First National Bank of Duncanville v.United States [481 F. Supp. 633↩ (N.D. Tex. 1979)]."