H.W. TSENG, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tseng v. Commissioner
Docket No. 11952-92
United States Tax Court
T.C. Memo 1994-126; 1994 Tax Ct. Memo LEXIS 134; 67 T.C.M. (CCH) 2501; March 28, 1994, Filed *134 Decision will be entered for respondent. H.W. Tseng, pro se. For respondent: Sherri Munnerlyn. NAMEROFF
NAMEROFF
MEMORANDUM OPINION NAMEROFF, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1] Respondent determined deficiencies in petitioner's 1985 and 1986 Federal income taxes in the respective amounts of $ 7,529.49 and $ 6,185.11. The issues for decision are: (1) Whether petitioner is entitled to deductions under section 162(a) for expenses incurred while "away from home"; (2) whether petitioner is entitled to deductions for claimed alimony payments for 1985 and 1986 in the respective amounts of $ 9,126.20 and $ 11,518.60; (3) if we determine that petitioner is entitled to deductions for alimony payments, we must then determine whether petitioner *135 is entitled to deductions for home mortgage interest for 1985 and 1986; (4) whether petitioner is entitled to dependency exemptions for his mother, Mei-Yung Chou Tseng, for 1985 and 1986, and his nephew, Chin-Pong Tseng, for 1986; (5) whether petitioner is entitled to head of household status for 1985; (6) whether petitioner is entitled to the general business credit claimed on his 1985 return; (7) whether petitioner is entitled to the net operating loss carryforward claimed on his 1985 return; (8) whether petitioner is entitled to exclude as community property 50 percent of the earnings received from California Polytechnic State University in 1985 but earned in a previous year; and (9) whether petitioner has established that he should be given a credit against his 1985 tax liability due to respondent's levies. Some of the facts have been stipulated and are so found. At the time of the filing of the petition herein, petitioner resided in San Luis Obispo, California. Petitioner bears the burden of proving respondent's determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Away from Home Expenses
Petitioner was *136 employed at California Polytechnic State University (Cal Poly) as a professor from 1969 until June 1984. In 1983, petitioner requested sabbatical leave from Cal Poly; however, such request was denied for budgeting reasons. Thereafter, petitioner applied for a position at the University of Minnesota at Duluth (UMD); UMD was establishing a computer engineering department and was searching for a department head. On January 31, 1984, after interviewing with UMD, petitioner was offered the position of department head. The offer from UMD stated, in pertinent part: To follow up our phone conversation it gives me great pleasure to confirm that I am prepared to forward your name to the Regents of the University of Minnesota for the position of Professor and Head, Department of Computer Engineering at a nine-months' salary of $ 44,000 plus $ 2,000 department head augmentation. In addition, I will guarantee two months summer salary during 1984, 1985, 1986 for the purpose of getting the department and the curriculum organized and operational. * * * The position will be available 1 June 84. * * *
Petitioner responded to UMD's offer on February 9, 1984, in part, as follows: Based *137 upon our telephone conversations on January 28, February 4 and 8, it is my understanding that the above position carries an immediate tenure * * * with two months summer salary guaranteed during 1984, 1985, and 1986. * * *
Petitioner requested two years' leave without pay from Cal Poly; petitioner was granted one year leave without pay, and was instructed to apply for a second year. After completing one year at UMD, petitioner requested and was granted an additional one year's leave without pay. During 1984, petitioner and his former wife, Susan Tseng, were having marital difficulties and ultimately separated. Petitioner testified that they reconciled prior to his beginning employment with UMD, and that Susan Tseng was planning on joining him in Minnesota. However, the record reflects otherwise. In response to a motion filed by Susan Tseng, the Superior Court of California, County of San Luis Obispo (hereafter referred to as the Superior Court) on April 19, 1984, issued a temporary restraining order prohibiting petitioner from entering the marital home. Moreover, on August 31, 1984, Susan Tseng was awarded exclusive use of the marital home. On October 28, 1985, the Superior *138 Court issued a Judgment of Dissolution terminating petitioner's marriage; however, all other issues were reserved for further disposition. On December 26, 1985, a civil bench warrant was issued for petitioner's arrest because petitioner had failed to comply with certain orders of the Superior Court. Petitioner testified that the bench warrant prohibited him from returning to California, and that, when the bench warrant was rescinded, he returned to California. However, the bench warrant was rescinded on January 22, 1987, and petitioner did not terminate his employment with UMD until February 17, 1988. [2]
Petitioner deducted the respective amounts of $ 6,933 *139 and $ 9,381 in 1985 and 1986 as away from home business expenses. [3] Respondent disallowed these expenses on the ground that petitioner's tax home during 1985 and 1986 was Duluth, Minnesota, and, thus, the expenses claimed by petitioner are nondeductible personal expenses under section 262. Petitioner contends that his tax home was San Luis Obispo, California; thus, his unreimbursed travel expenses while at UMD are deductible under section 162(a)(2) as traveling expenses while "away from home". Section 162(a)(2) allows a deduction for "traveling expenses * * * while away from home in the pursuit of a trade or business". Under section 162(a)(2), "traveling expenses" include amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances. To qualify for this deduction, *140 three conditions must be met: (1) The expenses must be ordinary and necessary; (2) the expenses must have been incurred while the taxpayer is "away from home"; and (3) the taxpayer must have incurred the expenses in pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465 (1946); Cockrell v. Commissioner, 321 F.2d 504, 507 (8th Cir. 1963), affg. 38 T.C. 470 (1962). As a general rule, a taxpayer's principal place of business constitutes the "tax home", even though the personal residence of the taxpayer is in another city or is not in the same vicinity as the place of employment. Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Kroll v. Commissioner, 49 T.C. 557, 561-562 (1968). A recognized exception to this rule exists where the taxpayer's employment in another vicinity is temporary as opposed to indefinite in duration. Peurifoy v. Commissioner, 358 U.S. 59 (1958); Horton v. Commissioner, 86 T.C. 589, 593 (1986). If the employment is temporary, the tax *141 home is considered to be the place of the taxpayer's residence; whereas, if the employment is indefinite, the tax home is the location of the employment. Kroll v. Commissioner, supra.
Employment is temporary if it can be expected to last for only a short period of time. Mitchell v. Commissioner, supra at 581; Tucker v. Commissioner, 55 T.C. 783 (1971). Employment must be temporary in contemplation at the time of its inception. McCallister v. Commissioner, 70 T.C. 505, 509 (1978). No single element is determinative of the factual issue of temporariness. Norwood v. Commissioner, 66 T.C. 467, 470 (1976). A job position may begin as temporary employment for a taxpayer and become indefinite employment. Chimento v. Commissioner, 52 T.C. 1067 (1969), affd. 438 F.2d 643 (3d Cir. 1971). Moreover, a taxpayer's desire to return to his former place of residence does not make employment temporary in those circumstances where employment would otherwise be indefinite. *142 Schmieder v. Commissioner, T.C. Memo. 1984-56. We do not believe petitioner's employment at UMD was temporary. UMD's offer of employment and petitioner's confirmation of such offer, provided that petitioner would be guaranteed a salary through August 1986. Thus, at the outset, petitioner viewed his employment with UMD to last at least 26 months. Additionally, petitioner bargained for, and was given, indefinite tenure by UMD. While petitioner may have intended to return to Cal Poly (and Cal Poly believed petitioner was going to return), in 1984, petitioner did not have any fixed date in mind to return. As such, his stay at UMD is perceived to be indefinite, and, therefore, he was not "away from home" for purposes of section 162(a)(2). Accordingly, for the foregoing reasons, we sustain respondent on this issue. Alimony Payments
Petitioner claimed alimony deductions for 1985 and 1986 in the respective amounts of $ 9,126.20 and $ 11,518.60. Respondent contends that petitioner is not entitled to an alimony deduction based on lack of substantiation. Alternatively, respondent contends that if the Court determines that petitioner is entitled *143 to alimony deductions in the amounts claimed, petitioner's deduction for home interest expense should be disallowed as a duplicative deduction; i.e., petitioner claimed alimony deductions and home interest deductions for the same payments. Petitioner and Susan Tseng were divorced on October 28, 1985. The divorce decree incorporated the provisions of an order issued by the Superior Court on December 21, 1984, which provided, in part: On the 1st calendar day of each month commencing Oct. 1, 1984 [petitioner] shall pay [Susan] the sum of $ 970.00. [Susan] shall timely pay the mortgage payment. [Petitioner] shall not be entitled to reimbursement for any monies paid on the mortgage pendente lite. [Petitioner] shall pay in a timely manner property taxes and insurance on the family residence until further order of this court.
On October 28, 1986, the Superior Court, modified the December 21, 1984, order effective retroactively to October 1, 1986. The modification provided as follows: The previous order as to spousal support filed on December 21, 1984 is modified effective October 1, 1986. Based upon the net earnings of the [petitioner] and the net earning capacity of [Susan] *144 as set forth above, the [petitioner] shall pay to [Susan] the sum of $ 550.00 per month as and for spousal support commencing on October 1, 1986. These payments shall become due and payable on the first day of each and every month thereafter until further order of the Court, or they shall terminate upon the death of [Susan]. [Susan] shall assume exclusive responsibility for mortgage encumbrance due and owing the family residence located at 446 Highland Drive in San Luis Obispo, California and the property taxes and insurance due thereon. These payments which were formerly being made from the parties [sic] Fidelity Daily Income Trust (FDIT) shall now be paid directly by [Susan] commencing October 1, 1986. 3. The Court confirms the previous order filed on December 21, 1984 regarding payment of spousal support, in the amount of $ 970.00 per month, payable by [petitioner] to [Susan] commencing October 1, 1984 and continuing to become due on the first day of each month thereafter.
Petitioner testified that he made payments to the holder of the mortgage on the marital home in lieu of making alimony payments to Susan Tseng. Section 215(a) provides a husband with a deduction for *145 amounts paid by him during the year if these amounts are includable under section 71 in the gross income of his former or separated wife. Yoakum v. Commissioner, 82 T.C. 128, 134 (1984). Section 1.71-1T(b), Q&A-6, Temporary Income Tax Regs., 49 Fed. Reg. 34455 (Aug. 31, 1984), answers the question of whether payments to a third party by one spouse may qualify as alimony. While the general answer to the question is "yes," the regulation also states: "Any payments to maintain property owned by the payor spouse and used by the payee spouse (including mortgage payments * * *) are not payments on behalf of a spouse even if those payments are made pursuant to the terms of the divorce or separation instrument." In other words, if petitioner pays the mortgage on property which he owns, but in which his former wife, Susan Tseng, resides, the payments are not alimony. Indeed, such payments would be enhancing petitioner's ownership interest. Thus, payments made to the mortgage holder do not constitute alimony. Accordingly, petitioner is not entitled to deduct such payments as alimony. [4]
*146 Additionally, at trial, petitioner contended that pursuant to a court order dated October 28, 1986, he made additional alimony payments to Susan Tseng in the amount of $ 2,200 which he failed to claim on his return. [5] However, petitioner's former wife was not called as a witness to corroborate his testimony as to these payments, and no other evidence, such as cancelled checks, was presented. The Superior Court's orders and divorce decree only establish petitioner's obligation to make payments, without proving in any way that such payments had in fact been made. Campbell v. Commissioner, T.C. Memo. 1986-375. We are not required to accept petitioner's self-serving and uncorroborated testimony, particularly where other and better evidence to prove the point in question was available. See Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964). Accordingly, we sustain respondent on this issue. *147 Dependency Exemptions and Head of Household Status
Petitioner claimed a dependency exemption for his mother, Mei-Yung Chou Tseng, for 1985, and, for 1986, he claimed dependency exemptions for both his mother and nephew, Chin-Pong Tseng. During the years at issue, petitioner's mother and nephew were Chinese citizens who resided in China. Respondent disallowed the exemptions contending that petitioner's relatives failed to qualify as dependents under the citizenship or residency test. Section 151(a) and (c)(1) allows a taxpayer a deduction for dependents as defined in section 152(a), provided certain requirements are met. Section 152(a)(4) and (6) provides that a taxpayer's mother or nephew may qualify as a dependent; however, such claimed dependent must meet the citizen or residency test. This test requires that the dependent be a U.S. citizen, or U.S. national, or resident of the United States, Canada, or Mexico some time during the calendar year in which the taxable year of the taxpayer begins. Sec. 152(b)(3). [6] Petitioner's mother and nephew fail this test. Moreover, the fact that petitioner's nephew is a full-time student in China does not alter this result. Accordingly, *148 we sustain respondent on this issue. Petitioner claimed head of household status on his 1985 return. As we have determined that petitioner's mother did not qualify as a dependent, he is not entitled to claim head of household status. Stelzig v. Commissioner, T.C. Memo. 1980-20. Accordingly, we sustain respondent on this issue. General Business Credit
Petitioner claimed a general business credit of $ 756.70 on his 1985 tax return. The credit was for his automobile, two computers, and an answering machine. *149 Respondent disallowed the credit based on her determination that the property was not used in petitioner's trade or business, and, therefore, did not constitute depreciable property. The investment credit is allowable for qualified investment in section 38 property, which is defined to include only property having a useful life of 3 years or more with respect to which depreciation is allowable. Sec. 48(a)(1). At trial, petitioner testified that the automobile was used primarily for commuting. Commuting does not constitute a business purpose. Accordingly, petitioner has failed to establish that the automobile was used in a trade or business. With regard to the credit claimed for the computer equipment, petitioner testified that he purchased such items to examine their hardware and see how they work. However, petitioner had access to many computers at UMD, and, based on petitioner's testimony, we conclude that the purchase of such items was for petitioner's personal research, rather than for use in petitioner's trade or business. That is, rather than being assets used in a trade or business and depreciable over their useful lives, these computers were purchased for petitioner's *150 personal use, examined, and apparently discarded. The purpose for which they were bought was short term in nature. Thus, they would not be depreciable, and hence no investment tax credit would be allowable. Additionally, petitioner failed to offer any testimony regarding the answering machine. Accordingly, we sustain respondent's determination on this issue. Net Operating Loss Carryforward
Petitioner claimed a net operating loss carryforward in the amount of $ 8,423 on his 1985 return based on losses sustained in 1982 with respect to his investment in oil and gas leases. Petitioner contends that he is entitled to the net operating loss carryforward because such loss constituted a business loss. Additionally, petitioner contends that respondent should be estopped from disallowing the net operating loss carryforward, based on respondent's allowance of the carryforward in previous years. Respondent disallowed the net operating loss carryforward based on her determination that such loss was attributable to a nonbusiness activity. In 1978, petitioner began to participate in a Federal program for the noncompetitive leasing of government lands for oil and gas exploration *151 and development, administered by the Bureau of Land Management (BLM). In awarding leases under the noncompetitive program, BLM utilized a simultaneous filing procedure (i.e., a lottery system), which provided all applicants with an equal chance to obtain leases on Federal lands available for re-leasing. Applications to lease designated parcels were submitted, signed, completed, and accompanied by a nonrefundable filing fee. An applicant was only allowed to file one application for each numbered parcel on the list; however, the applicant could make as many filings as there were available parcels. Pursuant to the program, petitioner participated in the oil and gas lease lottery. When petitioner successfully acquired leasehold interests in parcels of land owned by the Federal government, he subleased the properties to oil and gas companies in return for royalty interests. In 1982, petitioner and Susan Tseng paid $ 82,045 in filing fees for participation in the lottery program and successfully acquired 7 leases. They received oil and gas income in 1982 of $ 38,912.75. In addition, they paid $ 11,569 in net rental expense and $ 2,949.54 in other miscellaneous leasing expenses. *152 As a result, they claimed a net operating loss in the amount of $ 30,466.81. Petitioner and his former wife elected to waive the carryback period under section 172(b)(2)(C). Petitioner, in 1983 and 1984, has taken deductions against income, based on the alleged net operating loss carryforward in the respective amounts of $ 15,233.41 and $ 7,869. Petitioner's 1984 tax return was not a joint return. We need not determine whether petitioner's oil and gas activity constituted a trade or business, because petitioner, in 1985, had no remaining net operating loss carryforward. California is a community property state, and, as such, one-half of the net-operating loss claimed on the 1982 return is allocable to petitioner's former wife. Sec. 1.172-7(d)(1). Having deducted $ 15,233.41 on the joint 1983 return, only $ 15,233.40 remained as a net operating loss carryforward. However, subsequent to 1983, petitioner filed separate returns. Thus, petitioner's share of the remaining net operating loss was $ 7,616.70. Petitioner claimed a net operating loss carryforward in the amount of $ 7,869 on his 1984 return. Accordingly, petitioner is not entitled to a net operating loss carryforward *153 in 1985. Taxability of Earnings from California Polytechnic University
During 1983, rather than being paid for the quarter petitioner taught, petitioner "banked" the quarter and was supposed to take a paid quarter off in 1984. However, Cal Poly required petitioner to teach in 1984, and, therefore, paid him for the banked quarter in 1985. Petitioner contends he erroneously reported the entire amount of income, $ 10,734.15, received from Cal Poly on his 1985 return. Petitioner alleges that such income was earned in a prior year, before he was separated and subsequently divorced from Susan Tseng, and, therefore, constitutes community property and that only 50percent of the earnings are taxable to him. Respondent contends that such income does not constitute community property, and the entire amount received is taxable to petitioner. California is a community property State, and, under California law, a wife generally has a present interest in onehalf of any personal property that is acquired by her husband during the marriage. Cal. Civ. Code secs. 5105, 5110 (West 1983). Her one-half community property interest plainly extends at least to her husband's earnings. United States v. Malcolm, 282 U.S. 792 (1931); *154 Simmons v. Cullen, 197 F. Supp. 179, 181 (N.D. Cal. 1961). However, earnings of a husband while living separate and apart from his wife are the separate property of the husband. Cal. Civ. Code sec. 5118 (West 1983). In the instant case, petitioner earned the Cal Poly income during a year when petitioner and Susan Tseng were residing together and deferred payment of the income to 1985, when they were divorced. Thus, the amount received by petitioner in 1985 constitutes community property. See Winn v. Winn, 299 P.2d 721 (Cal. Ct. App. 1956). However, section 66(b) allows respondent to deny petitioner the benefit of the applicable community property laws with respect to any income if the taxpayer acted as if solely entitled to such income and failed to notify his spouse before the due date of the return for the taxable year in which the income was derived of the nature and amount of such income. Based on this record, it is clear that petitioner acted as if the income he received in 1985 from Cal Poly was solely his. Petitioner failed to notify Susan Tseng of the nature and amount of income. Thus, section 66(b) applies, *155 and we hold that the entire amount of income received in 1985 from Cal Poly is taxable to petitioner. Credit for Amount Levied
At trial, petitioner contended that $ 783.63 and $ 500 were obtained by the IRS by levy for his 1985 tax liability and that such amounts should be credited against any deficiency determined for 1985. Petitioner has failed to present any evidence to establish that there were any levies issued by respondent which pertained to his 1985 tax liability. Moreover, respondent's records do not reveal a levy for either his 1985 or 1986 tax liability. What appears to have occurred is that respondent, in 1986, served levies on the FDIT account and on UMD with regard to unpaid 1984 tax liabilities. Moreover, it is also possible that refunds due petitioner were applied to unpaid tax liabilities for 1983 and 1984. This Court has limited authority and may exercise jurisdiction only to the extent expressly provided by Congress. Sec. 7442; Pyo v. Commissioner, 83 T.C. 626, 632 (1984); Kluger v. Commissioner, 83 T.C. 309 (1984); Medeiros v. Commissioner, 77 T.C. 1255, 1259 (1981). *156 Our jurisdiction is premised upon the issuance of a notice of deficiency by respondent and the timely filing of a petition for redetermination of the deficiency by the taxpayer. The fact that moneys were collected by respondent during a year before the Court does not give us jurisdiction over such matter. Once respondent has collected funds and applied them to an account for another taxable year, petitioner's remedy is to seek a refund for such taxable year by filing claims for refund for that taxable year. Moreover, this Court has jurisdiction as to an allegedly erroneous levy only with respect to the deficiency. Sec. 6213(a); see also section 7429(b)(2)(B). To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. After negotiations, petitioner and UMD entered into a terminal leave agreement dated February 17, 1988, containing the following clause: 2. Professor Tseng * * * will receive one and onehalf academic year's salary paid semi-monthly or in lump sum payments for the period September 1, 1988 through May 31, 1989 and September 1, 1989 through January 15, 1990.↩
3. The parties have stipulated that petitioner incurred expenses for meals, lodging, dry cleaning, phone bills, and commuting in Minnesota totalling $ 6,932.91 and $ 9,271.35 for 1985 and 1986, respectively.↩
4. Petitioner, did claim, and was allowed, a home mortgage interest deduction. However, the record reflects that until October 1, 1986, the payments were made from the Fidelity Income Trust (FDIT) account, a joint account of petitioner and Susan Tseng. Thus, petitioner only paid one-half of the mortgage, the other half was paid by Susan Tseng via her interest in the community funds. Nevertheless, petitioner deducted the entire amount of home mortgage interest paid during the years at issue. However, in the notice of deficiency, respondent did not determine that petitioner was only entitled to one-half of the interest claimed. Therefore, we will not hold otherwise.↩
5. At trial, petitioner attempted to submit carbon copies of checks purportedly paid to Susan Tseng as alimony. Respondent objected to the admission of the carbon copies on the grounds that petitioner had failed to comply with the Court's Pretrial Order that parties, not less than 20 days prior to trial should, inter alia, exhibit to each other any documentary evidence intended to be offered at trial. The purpose of the Court's Pretrial Order was to avoid surprise, promote stipulation of uncontroverted facts and exhibits, and shorten trial time. We sustain respondent's objection. However, even if admitted, carbon copies of written checks do not establish that such checks were ever paid.↩
6. Petitioner contends that such provision is unconstitutional. However, the constitutionality of this section has been repeatedly upheld. See Habeeb v. Commissioner, 559 F.2d 435 (5th Cir. 1977), affg. T.C. Memo. 1976-259; Wexler v. Commissioner, 507 F.2d 843 (6th Cir. 1974), affg. T.C. Memo. T.C. Memo. 1974-113; Barr v. Commissioner, 51 T.C. 693↩ (1969).