**Charles E. WESTENBERG, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 2370.**

United States District Court
D. Arizona.

April 10, 1968.

James Powers, Powers & Rehnquist, Phoenix, Ariz., for plaintiff.

A. Jerry Busby, Tax Division, Justice Department, Washington, D.C., and Edward Davis, U.S. Atty., District of Arizona, Tucson, Ariz., for defendant.

## FINDINGS AND OPINION

KILKENNY, District Judge:

This is an action for refund of a "penalty" imposed on plaintiff pursuant to Section 6672 of the Internal Revenue Code of 1954.[1] Defendant counterclaims for a claimed liability under the same section. Each of the parties waived a trial by jury.

The taxpayer is a citizen and a resident of the State of Arizona, United States of America, and is subject to the Internal Revenue Laws. Vi-Le-Bar Construction Co., Inc. was organized on May 1, 1962, to take over the contracting business of the taxpayer. The taxpayer was president of the said corporation and owned 90% of its stock. Robert W. Jansen was vice-president and owned the remaining 10% of the stock. E. Grace Smith was secretary-treasurer. When the corporate bank accounts were set up, the corporate resolution and signature

---

1. 26 U.S.C.1954 ed., § 6672.

cards went to the bank indicating that any of the above-named officers was authorized to sign checks. The corporation filed Employer's Quarterly Federal Tax Returns (Form 941) for withheld income and social security taxes for the second and third quarters of 1962 over the signatures of E. Grace Smith, secretary-treasurer, and for the fourth quarter of 1962 over the signature of the taxpayer, Charles E. Westenberg, President, showing employment tax liability as follows:

| | |
|---|---|
| 2nd quarter | $15,943.67 |
| 3rd quarter | 12,542.36 |
| 4th quarter | 1,799.56 |
| Total | $30,285.59 |

A depository receipt in the amount of $5,246.65 accompanied the return for the second quarter, leaving a second quarter balance of $10,697.02, which when added to the third and fourth quarter unpaid taxes of $12,542.36 and $1,799.56, accounted for the $25,038.94 in unpaid employment taxes. In contrast to the unpaid employment taxes of $25,038.94, the 100% penalty assessed against the taxpayer was $17,990.58, the difference is explained by the fact that the Government received payments which it applied against the second and third quarters to reduce the unpaid balance to $6,230.04 and $10,241.26, respectively. In addition, the difference is explained by the fact that the $1,799.56 unpaid corporate balance for the fourth quarter, the Government assessed $1,518.68 of this amount against the taxpayer because only one-half of the FICA taxes constitute a trust fund in favor of the Government.

The District Director of Internal Revenue for the State of Arizona timely made an assessment in the amount of $17,990.58 against the taxpayer on September 24, 1963. On March 17, 1965, $149.00 was collected from the taxpayer by levy on a bank account; on November 9, 1965, $548.01 was collected by crediting a refund due to the taxpayer from his 1962 personal income tax return; and an additional $14.76 was col-lected by crediting the interest on the foregoing. These collections totaled $711.79, the amount of the taxpayer's first claim for refund and the amount sued for in the complaint. On March 31, 1967, $424.20 was collected by crediting a refund due the taxpayer from his 1966 personal income tax. This amount was the subject of the taxpayer's second claim for refund, but is not part of the amount set forth in the complaint. A payment of $381.61 was made on February 26, 1965, and another payment of $154.25 was made on February 25, 1965, and a credit of $131.23 was made on May 26, 1966. These amounts have not been claimed by the taxpayer on any claim for refund or in the complaint. On December 9, 1966, within two years from the time the tax was paid, the District Director received a claim for refund in the amount of $711.79 for the three quarters involved. Notice of Disallowance of this claim was sent by certified mail to the taxpayer on August 14, 1967.

On December 26, 1962, taxpayer filed a Petition in bankruptcy, and on January 15, 1963, Vi-Le-Bar Construction Co., Inc. followed suit. On March 24, 1965, the taxpayer received a discharge in bankruptcy. The two payments of $381.61 and $154.25 listed above were paid out of the taxpayer's bankrupt estate.

Presented for decision are three issues of law and fact as follows: (1) whether the taxpayer was a person required to collect, truthfully account for, and pay over, the employment taxes of Vi-Le-Bar Construction Co., Inc., (2) if he was such a person did he willfully fail to pay these amounts to the Government, and (3) if the answer to the foregoing is in the affirmative, then was the taxpayer's liability for the 100% penalty discharged by his general discharge in bankruptcy?

■ At the close of the testimony, I found that the plaintiff was a person who was required to collect, to truthfully account for and to pay over the employ-

ment taxes of the Vi-Le-Bar Construction Co., Inc. and that he willfully failed to pay those amounts to the Government. I so find and in support of these findings incorporate herein my remarks from the Bench at the close of the testimony.

 Plaintiff earnestly argues that his discharge in bankruptcy[2] relieves him from liability and cites in support of his position United States v. Mighell, 273 F.2d 682 (10th Cir.1959). It is my impression that *Mighell* does not support the plaintiff's position. There the Government was attempting to collect a 50% civil fraud penalty which had been assessed against the taxpayer. Involved in that case was a true penalty, and is not, in any sense, a tax. Here, although the liability imposed is designated as a "penalty",[3] I believe the use of the word "penalty" is ill advised, and that the Congress merely shifted the liability for the *tax* from the corporation to the person who willfully failed to "collect, truthfully account for, and pay over the tax." That with which we are here concerned is not a penalty added to the tax, but a shifting of responsibility for payment of the liability. Chief Judge Lumbard in Botta v. Scanlon, 2 Cir., 314 F.2d 392 (2d Cir.1963), exhaustively treats of the subject and arrives at the conclusion that the "penalty" mentioned in Section 6672 should be treated as a tax in proceedings to enforce the liability against one who is required to collect, truthfully account for and pay over the said tax. His approach is impressive and should be followed. District Court decisions arriving at the same conclusion are Sherwood v. United States, 228 F.Supp.

247 (S.D. N.Y.1964) and Lynn v. Scanlon, 234 F.Supp. 140 (E.D. N.Y.1964).

As a consequence, I hold that the liability of plaintiff under Section 6672 was not discharged by his proceedings in bankruptcy.

Defendant is entitled to judgment on its counterclaim in the amount of its assessment.

This opinion shall serve as my findings and conclusions. Counsel for defendant shall prepare, serve and forward an appropriate judgment to be entered herein.

---

2. "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as (1) are due as a tax levied by the United States * * *." 11 U.S.C. § 35.

3. "SEC. 6672 FAILURE TO COLLECT AND PAY OVER TAX, OR ATTEMPT TO EVADE OR DEFEAT TAX.
   Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable."