**FIRST NATIONAL BANK OF DUNCANVILLE**

v.

**UNITED STATES of America.**

No. CA3–77–909–F.

United States District Court,
N. D. Texas,
Dallas Division.

Aug. 10, 1979.

Charles M. Meadows, Jr., Thomas G. Hineman, Durant, Mankoff, Davis, Wolens & Francis, Dallas, Tex., for plaintiff.

Kenneth J. Mighell, U.S. Atty., Fort Worth, Tex., William W. Guild, Martha Jo Stroud, M. Bruce Peele, U.S. Dept. of Justice, Dallas Tex., for defendant.

## MEMORANDUM DECISION

ROBERT W. PORTER, District Judge.

Plaintiff, First National Bank of Duncanville, instituted this suit pursuant to 28 U.S.C. § 1346(a)(1) to recover $15,840.61 alleged to have been erroneously assessed and collected by the Defendant Internal Revenue Service (I.R.S.) for the calendar year 1974. The I.R.S. has counterclaimed for interest allegedly due. The dispute has been submitted to this Court upon stipulated facts and they are found accordingly.

## STIPULATED FACTS

During 1971 and 1972, Plaintiff financed the activities of William & Walker Construction, Inc. (hereinafter referred to as Debtor) which was engaged in the business of carpenter framing for apartment complexes. Loans to Debtor were made pursuant to a security agreement which secured, inter alia,

> All past, present, and future advances, of whatever type, by bank to debtor . . [a]ll existing and future liabilities, of whatever type, [and a]ll costs incurred by bank to obtain, preserve, and enforce this security interest, and maintain and preserve the collateral . . . *including taxes [and] assessments.*

(emphasis added); *See* Stipulated Facts, Exhibit "A".

In conjunction with the security agreement executed by Plaintiff and Debtor, "a financing arrangement was established whereby each Friday [Debtor] would borrow funds to meet its weekly payroll and would execute a new note therefor." *Id.* at 2. On the fifteenth of each month Debtor received payments from one of its major subcontractors. On the twentieth day of each month Debtor would pay the Plaintiff and thereby retire its outstanding notes. *Id.* In late summer of 1972, Debtor's subcontractor ran into financial difficulties which resulted in its failure to make its periodic payments to Debtor. In turn, Debtor was without sufficient funds to make its payments to Plaintiff. Plaintiff recognized that without further monetary support of Debtor there was a substantial likelihood that Plaintiff's loan of $150,000.00 would become uncollectible due to Debtor's insolvency. *Id.*

In the fourth quarter of 1972, Plaintiff and Debtor entered into a new arrange-

ment whereby Plaintiff would send an employee to Debtor's place of business to sift through the mail and remove all checks received by Debtor. Plaintiff apportioned the money collected in this manner between retiring some of Debtor's outstanding indebtedness to Plaintiff and depositing the remainder in a "special account." Money from the special account was earmarked and used to pay the expenses necessary to keep the Debtor's office operating. *Id.* at 3. Withdrawal of funds from the special account required both the Plaintiff employee's signature and that of an official of the Debtor. Prior to the close of the fourth quarter of 1972, it became apparent to Plaintiff that its efforts to keep Debtor afloat had failed and the Plaintiff directed its employee to cease co-signing checks drawn on the special account. Although the parties have stipulated that Debtor was "out of money", *Id.*, the Court is without information as to the status of the special account at the close of the fourth quarter of 1972 or the status of Debtor at the close of 1974.

In 1974 the I.R.S. asserted a one hundred (100) per cent penalty for failure to pay over employment taxes pursuant to 26 U.S.C. § 6672 (1954) against Plaintiff and its employee. A settlement was reached whereby the employee was released from all liability and Plaintiff was similarly released from liability for the third quarter of 1972 on condition that it pay the one hundred (100) per cent penalty assessed for the fourth quarter of 1972.

On December 16, 1974, Plaintiff paid to the I.R.S. the sum of $34,738.18 in satisfaction of the agreed settlement (excluding the pending counterclaim for interest). Plaintiff deducted this amount on its 1974 income tax return. The I.R.S. disallowed Plaintiff's 1974 income tax return. The I.R.S. disallowed Plaintiff's 1974 deduction of $34,738.18 and in conjunction with this action assessed an additional tax against the Plaintiff. Plaintiff paid this assessment and timely filed a refund claim for the additional taxes and interest paid. The claim for refund was similarly disallowed by the Defendant resulting in the timely filing of this cause.

The I.R.S. has counterclaimed for an additional $1,938.59 attributable to an unpaid deficiency interest assessment arising from this dispute.

### ISSUES PRESENTED

Plaintiff raises various theories in support of the deductibility of the one hundred (100) per cent penalty assessed against, and paid by, the Plaintiff pursuant to I.R.C. § 6672.[1] In support of Plaintiff's claim of deductibility, it urges this Court to find: that such payment is deductible as a "wholly worthless bad debt" pursuant to I.R.C. § 166; alternatively, such payment is deductible as "taxes paid" presumably within the ambit of I.R.C. § 164 or § 275; or in the alternative, as an "ordinary and necessary business expense" pursuant to I.R.C. § 162.

Plaintiff further asserts that its payment to the Defendant, though termed a "one hundred per cent penalty" under 26 U.S.C. § 6672, is more aptly treated as the payment of 26 U.S.C. § 3505(b)[2] liability which would be deductible as such.

1. Section 6672 states in pertinent part:

   Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.
   Title 26 U.S.C. § 6672 (1954).

2. Section 3505(b) states in pertinent part:

   If a lender, surety, or other person supplies funds to or for the account of an employer for the specific purpose of paying wages of the employees of such employer, with actual notice or knowledge (within the meaning of section 6323(i)(1)) that such employer does not intend to or will not be able to make timely payment or deposit of the amounts of tax required by this subtitle to be deducted and withheld by each employer from such wages, such lender, surety, or other person shall be liable in his own person . . . to the United States in a sum equal to the taxes (together with interest) which are not paid over to the United States by such employer

The I.R.S. contends that to allow the deduction on any theory is to run afoul of Internal Revenue Code § 162(f) and the regulations promulgated under it or, in the alternative, is contrary to the doctrine of public policy which is said to preclude deduction of the one hundred (100) per cent penalty assessed pursuant to I.R.C. § 6672.

Defendant counters Plaintiff's assertion that section 3505(b) is the appropriate section to assess liability by stating that the government "may have been able to assert Section 3505 liability . . . but that is not what occurred."

## DEDUCTIBILITY AS A WHOLLY WORTHLESS BAD DEBT UNDER I.R.C. § 166

Plaintiff claims that its payment of $34,-738.18 gave rise to a debt between itself and Debtor, and that such debt was worthless and thus deductible under § 166.[3] Defendant contends that the payment resulted from Plaintiff's own liability "separate and distinct" from any liability of the Debtor and no debt arose between Plaintiff and Debtor as a result of the settlement reached between Plaintiff and Defendant.

■ To support a § 166 deduction, Plaintiff must establish that a debt existed[4] and that the debt became wholly worthless within the taxable year.

Whether a debt existed requires the resolution of a number of questions. First, was there a valid, subsisting debtor-creditor relationship between Plaintiff and Debtor when Plaintiff settled with Defendant? A determination that Debtor was insolvent and had ceased doing business is not dispositive. See Stamos v. Commissioner, 22 T.C. 885, 888–90 (1954) (and cases cited therein) (Insolvent but still existing corporation

which had discontinued its business operations was a "debtor" for purposes of determining validity of debt under loss provisions of I.R.C.); 15A Fletcher, Cyc Corp. (Perm.Ed.1967) § 7367 at pp. 39–43 and n. 32. Corporate existence is neither altered by reason of its insolvency, lack of assets or inability to pay its debts nor does insolvency affect the bank's right to do business with the insolvent corporation or relinquish any of its rights or remedies.

■ The debtor-creditor relationship is no less viable because the debt was worthless when acquired. Stamos, supra at 888–89. So long as Debtor was in existence at the time Plaintiff made payment to Defendant, a debtor-creditor relationship could exist. The Court finds that the Debtor, although scarcely more than a corporate shell at the time of Plaintiff's payment to the I.R.S. was in existence and thus a valid debtor-creditor relationship could exist. The Court further finds that the loans to Debtor coupled with the security agreement entered into between Debtor and Plaintiff are ample evidence that a debtor-creditor relationship was intended by the Debtor and Plaintiff and that such evidence establishes the existence of the debtor-creditor relationship.

Having determined that such a relationship existed, the question remains whether Plaintiff's payment to the I.R.S. created a debt cognizable under the security agreement. It is clear from Plaintiff's security agreement with Debtor that all costs incurred by Plaintiff including "taxes and assessments" which were paid by Plaintiff to "maintain and preserve" its collateral were part of Debtor's obligation to Plaintiff. See Stipulated Facts, Exhibit "A". The Court, on the facts of this case, inter-

---

with respect to such wages. However, the liability of such lender, surety, or other person shall be limited to an amount equal to 25 percent of the amount so supplied to or for the account of such employer for such purpose.
Title 26 U.S.C. § 3505(b) (1971).

3. Section 166 provides in pertinent part:
   (a) General Rule

(1) Wholly worthless debts—There shall be allowed as a deduction any debt which becomes worthless within the taxable year.
Title 26 U.S.C. § 166 (1954).

4. Treasury Regulation § 166–1(c) provides that in order for § 166 to apply a "bona fide" debt must exist. The regulation defines a "bona fide" debt as a debt which arises from a debtor-creditor relationship.

prets the words "tax or assessment" found in the security agreement to include the payment of § 6672 liability or for that matter, § 3305(b) liability. But that is not enough. The Court must also find that such payment was made by Plaintiff to "maintain and preserve" its collateral before we may treat the payment as a valid debt under the security agreement.

In determining whether such payment was made by Plaintiff to "maintain and preserve" its collateral we must look to the "origin" of the claim rather than its consequences to the taxpayer. *Cf. United States v. Gilmore*, 372 U.S. 39, 43–44, 83 S.Ct. 623, 9 L.Ed.2d 570 (1962). Here the origin of Plaintiff's potential liability to the I.R.S. was its reasonable but unavailing efforts in marshaling Debtor's assets. "But for" the debtor-creditor relationship and Plaintiff's understandable desire to protect and maintain its dwindling collateral, no such involvement in debtor's economic affairs would have occurred. *See id.* at 52.

Therefore, as between the Plaintiff and "Debtor" the payment by Plaintiff to the I.R.S. created a "bona fide" debt within the meaning of the security agreement. Concluding that a "bona fide" debt existed does not end our enquiry. The I.R.S. contends that even if the money paid would ordinarily give rise to a wholly worthless bad debt deduction under I.R.C. § 166, to allow the deduction in the instant case would negate the intent of I.R.C. § 6672, violate the intent of I.R.C. § 162(f) which denies deductibility to fines and penalties, and contravene the "doctrine of public policy."

The I.R.S. reaches these conclusions for a number of reasons which shall be explored here. The I.R.S. claims, as it has for many years, that the liability imposed by Section 6672 is "separate and distinct" from the liability which accrued to the debtor and therefore the Debtor cannot "owe" anything to the Plaintiff here. *See, e. g., Hornsby v. I. R. S.*, 588 F.2d 952 (5th Cir. 1979) (not clearly erroneous to assess § 6672 liability upon "responsible person" where no attempt made to collect from corporation); *Emshwiller v. United States*,

565 F.2d 1042, 1047 (8th Cir. 1977); *Moore v. U. S.*, 465 F.2d 514, 517–18 (5th Cir. 1972) (liability imposed by § 6672 is distinct from and not in substitution of the liability for taxes owed by the employer); *Datlof v. U. S.*, 370 F.2d 655 (3rd Cir. 1966) (same); *Kelly v. Lethert*, 362 F.2d 629 (8th Cir. 1961) (assessment under § 6672 while separate and distinct from that of defunct corporation makes responsible officers co-debtors to the Government). *But Cf. Newsome v. U. S.*, 431 F.2d 742 (5th Cir. 1970) (officer only liable under § 6672 if corporation does not pay . . . withheld taxes at date prescribed); *See also Westenberg v. U. S.*, 285 F.Supp. 915, 917 (D.Ariz.1968) (Liability imposed, though designated as a penalty is merely a shift of liability and not a penalty added to the tax); *Larson v. U. S.*, 340 F.Supp. 1197, 1199 (E.D.Wis.1972) ("regardless of the use of the word 'penalty' in § 6672, [it] was not intended by Congress to be a penalty but rather a means of insuring that the tax is paid and a shifting of the responsibility for the payment of the tax"); *Emshwiller, supra* at 1047 (Section 6672 liability while personal and distinct liability of taxpayer, government entitled to only one satisfaction of the debt). *See also Kelly, supra* at 635:

> The Government, as a matter of fairness, should attempt to satisfy as large a share of the tax liability from the bankrupt as is possible and thus use the *legal suretyship* imposed by section 6672 to cover uncollectable taxes due under the tax provisions . . . (emphasis added.)

Absent the security agreement existing in this case, the separate and distinct nature of section 6672 liability would appear to preclude its deductibility as a "bad debt". The holdings in *Hornsby, supra* and the cases that preceded it are distinguishable in one important respect. The issue here is not whether, how much, or upon whom liability may be imposed in the first instance, but whether a contractual right to contribution or indemnity converts an otherwise non-deductible penalty into a deductible bad debt. In a case of first impression this Court holds today that such a

638

contractual relationship does give rise to a cognizable debt under I.R.C. § 166. *See* J. Hertz, *Personal Liabilities of the Unsuspecting Executive for Penalties Under Section 6672 and other Nightmares*, 32 N.Y.U. Inst. on Fed. Tax. 1171 at 1186 (party who is in responsible position should obtain contractual right to contribution or indemnity with respect to any penalties of the sort imposed by §§ 3505 and 6672).

But would the allowance of a deduction here defeat the intent of §§ 6672 and 162(f) of the I.R.C. as the I.R.S. urges?

The Tax Court has had three occasions to decide a similar issue: *Stamos v. Comm.*, 22 T.Ct. 885(A) (1954); *B. T. Smith v. Comm.*, 34 T.Ct. 1100 (1960), *aff'd per curiam*, 294 F.2d 957 (5th Cir. 1961); and *Kolberg v. Comm.*, T.C.M. 1965–171.

Although in *Stamos, supra* at 888, the Tax Court did permit the deduction as a non-business bad debt (taxpayer not in the business of making loans), in *Smith, supra*, some six years later it held otherwise and was affirmed by the Fifth Circuit explaining that the allowance of such a deduction would, in effect, reduce the amount of I.R.C. § 2707(a)[5] liability by the amount of the tax benefit resulting from the deduction. To allow such a deduction, the court said, "would produce the incongruous result of reducing the net sanction to a progressively smaller amount as the income of the wrongdoer rises to higher levels." *Smith, supra* at 1106. The Tax Court went on to note in *Stamos, supra*, that no assessments had been made against Stamos personally and the court there had failed to pass upon the issue relating to the frustration of "well defined" public policy which it regarded as determinative. T.C. 3030.

If we characterize § 6672 liability as a mere shifting of liability for the "protection of revenues," N.Y.U. Inst. of Fed. Tax. at 1186–87; *Westenberg, supra*, then to allow a deduction here would not undermine the Congressional scheme. On the other hand, if we follow the rationale of *Smith, supra*,

§ 6672 liability is imposed as a deterrent against *willful*[6] failure to pay taxes and must therefore be denied deductibility. Under the facts of this case, the latter result is unduly harsh.

The doctrine of frustration of public policy prevents an otherwise allowable deduction from being taken where the allowance of such a deduction would *severely* and *immediately frustrate a sharply defined national policy*. *See e. g., Tank Truck Rentals v. Comm.*, 356 U.S. 30, 78 S.Ct. 507, 2 L.Ed.2d 562 (1958) (to allow deduction of fine imposed for violation of maximum weight laws would take the "sting" out of the penalty); *Comm. v. Tellier*, 383 U.S. 687, 86 S.Ct. 1118, 16 L.Ed.2d 185 (1966) (legal fees expended to defend against Securities Act charges held deductible because they would not frustrate sharply defined public policy).

Yet can it be said that a sharply defined policy exists when the I.R.S. only asserts § 6672 liability when the employer lacks sufficient funds to pay the tax itself? N.Y.U. Inst. Fed. Tax. at 1174–75 and n. 7. Nor can we ignore the equally strong national policy in favor of lenders not foreclosing immediately upon delinquent accounts. See generally 37 C.J.S. Forfeitures § 4 (forfeitures generally not favored and shall be strictly construed). *In Re Muskegon Motor Specialties*, 366 F.2d 522, 525 (6th Cir. 1966) (purpose of Chapter X is to preserve going concern value of business and avoid uneconomic expedient of forced sale of assets).

Further, the I.R.S. concedes that it could have sought its relief under I.R.C. § 3505(a). That provision was specifically enacted by Congress to deal with various lending arrangements which presumably could circumvent a lender's liability for unpaid employment taxes under § 6672. *But see First Nat. Bank in Palm Beach v. United States*, 591 F.2d 1143 (5th Cir. 1979)

5. I.R.C. § 2707(a) (1939) was the precursor to I.R.C. § 6672 (1970).

6. "Willful" as defined under the statute means a knowing and intentional preference of other creditors to the Government.

(I.R.S. not precluded from seeking to impose § 6672 liability upon lenders). Had the I.R.S. done so the payment under § 3505(a) would appear to be deductible as it is not an "assessable penalty", as is § 6672. This Court is compelled to conclude that the mere election of remedies by the I.R.S., one which would permit deductibility, one which would deny deductibility, will not erect a "sharply defined national policy" which may be "frustrated" by permitting its deduction here.

Because the taxpayer is entitled to deduct the payment of $34,738.18 as a "bad debt" under I.R.C. § 166 there is no reason to reach the taxpayer's assertion that such a penalty may be deducted under I.R.C. §§ 164, 275 and 162.

Therefore, it is the judgment of this Court that the Plaintiff's suit to recover $15,840.61 be granted and that the Plaintiff also recover pre-judgment interest at the rate of 6% per annum. Accordingly, the I.R.S.'s counterclaim for interest allegedly due is denied.

It is so ORDERED.