JAMES A. TITMAS, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Titmas v. Commissioner
Docket No. 3824-92
United States Tax Court
T.C. Memo 1995-267; 1995 Tax Ct. Memo LEXIS 266; 69 T.C.M. (CCH) 2920; June 15, 1995, Filed *266 Decision will be entered for respondent. James A. Titmas, pro se. For respondent: Jeffry J. Erney and Jack E. Prestrud. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined deficiencies in petitioner's income tax of $ 8,345 for 1987 and $ 6,335 for 1988. Respondent also determined that petitioner is liable for an addition to tax of $ 2,123 under section 6651(a)(1) for 1987 for failure to timely file a return. The issues for decision are: 1. Whether petitioner may deduct as a business bad debt $ 22,807.17 that he paid to respondent for the responsible officer penalty under section 6672 (100-percent penalty). We hold that he may not. 2. Whether petitioner may deduct as a business bad debt $ 29,577.24 that he paid to Goodyear Bank because he guaranteed a line of credit for J.T. & Associates, Inc. We hold that he may not. 3. Whether petitioner may deduct an additional $ 5,284.59 as a business bad debt. We hold that he may not. 4. Whether petitioner is liable for the addition to tax for failure to timely file a return under section 6651(a)(1) for 1987. We hold that he is. Section references are to the Internal Revenue Code in effect *267 during the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner is an engineer who lived in Fairlawn, Ohio, when he filed his petition. He incorporated J.T. & Associates, Inc. (J.T.), on March 3, 1977, as a professional corporation to practice engineering and surveying in Ohio. Initially, petitioner and Robert L. Wellert were the shareholders of J.T. Petitioner contributed $ 500 to J.T.'s capital. Petitioner became J.T.'s sole shareholder on June 30, 1978. Petitioner's salary from J.T. for 1977 and 1978 was between $ 20,000 and $ 24,000. J.T. lost $ 6,469 in its first year of operation (March 3, 1977, to January 31, 1978), $ 2,045 in its second year of operation (February 1, 1978, to January 31, 1979), and $ 25,931 in its third year of operation (February 1, 1979, to January 1, 1980). On January 31, 1979, petitioner owed J.T. $ 1,560, and J.T. owed petitioner no amount. On January 31, 1979, J.T. had total liabilities of $ 10,677. Petitioner's shareholder's equity account in J.T. had a deficit of $ 1,542 on January 31, 1979. J.T.'s payments to its employees *268 grew much faster than its income. To make those payments, J.T. opened a $ 35,000 line of credit with Goodyear Bank on February 20, 1979. Petitioner personally guaranteed the line of credit by giving Goodyear Bank a mortgage on his home as security. J.T. did not pledge any corporate assets as security for the line of credit because it did not have any. J.T. used advances on the line of credit to pay salaries, taxes, and operating costs. J.T. did not pay its quarterly Federal withholding taxes in June, September, and December 1979, June, September, and December 1980, September and December 1981, and March 1982. J.T. did not pay its annual Federal unemployment taxes for 1978, 1979, and 1980. It did not repay its debt to Goodyear Bank for the line of credit. J.T. went out of business in 1982. It owed respondent more than $ 25,004.26 for outstanding payroll taxes. Respondent determined that petitioner was a responsible officer of J.T. and imposed the 100-percent penalty of $ 25,004.26 under section 6672. On September 21, 1983, respondent filed a Federal tax lien against petitioner for $ 25,004.26. Petitioner and his former spouse, Janice Lynn Titmas, filed for bankruptcy under *269 chapter 11 in 1987. The bankruptcy court allowed them to withdraw from the chapter 11 proceedings if they sold their residence and paid their debts from the proceeds. They sold their residence on February 13, 1987, for $ 105,000. Respondent received $ 22,804.17 from the sale of petitioner's residence to apply towards the 100-percent penalty. Goodyear Bank received $ 29,577.24. After petitioner and his wife sold the house and paid their debts, petitioner moved to Dallas, Texas, where he began to work for Oxidyne Corp. Petitioner and his wife divorced in 1987. Petitioner retained David Williams (Williams), a certified public accountant, to prepare his 1987 and 1988 returns. Petitioner signed his 1987 and 1988 returns on March 8, 1989. Williams signed those returns as preparer on March 8, 1989. Petitioner did not report any gross receipts or any other items on his Schedules C for 1987 and 1988 except for business bad debt deductions of $ 38,000 for 1987 and $ 19,666 for 1988. On his 1987 return, petitioner did not report that he had made any payments for his 1987 tax liability, including amounts paid with his Form 4868 extension request. OPINION A. Bad Debt Deductions
*270 We must decide whether petitioner may deduct three amounts as bad debts under section 166. 1. Responsible Officer Penalty
Petitioner contends that he may deduct $ 22,804.17 that he paid to respondent for the 100-percent penalty as a business bad debt because J.T. owed but could not repay him that amount. Petitioner also argues that public policy is not frustrated because the bankruptcy court and the Federal Reserve caused or contributed to J.T.'s financial problems. A taxpayer generally may deduct any debt which becomes worthless during the taxable year. Sec. 166(a). A taxpayer may not deduct payment of the section 6672 penalty under section 162(a) or section 165(c)(1) because it would frustrate public policy. Sec. 162(f); Medeiros v. Commissioner, 77 T.C. 1255, 1258-1259, 1262 (1981); Patton v. Commissioner, 71 T.C. 389 (1978). [1] Similarly, a taxpayer may not deduct the penalty imposed by section 6672(a) as a bad debt under section 166.[2]Smith v. Commissioner, 34 T.C. 1100, 1102-1103 (1960), affd. per curiam 294 F.2d 957 (5th Cir. 1961); Duncan v. Commissioner, T.C. Memo. 1993-370. *271 We conclude that petitioner may not deduct as a business bad debt the $ 22,804.17 that he paid to respondent for the 100-percent penalty. Sec. 162(f). 2. Guarantee for J.T.'s Line of Credit
Petitioner contends that he may deduct $ 29,577.24 that he paid to Goodyear Bank to satisfy his guarantee of J.T.'s line of credit. Respondent argues that *272 petitioner's guarantee was an indirect contribution to capital which is not deductible as a bad debt. Payment by a shareholder of a guaranteed debt obligation may be either a contribution of capital or a loan to the corporation for which the guarantee was made. Casco Bank & Trust Co. v. United States, 544 F.2d 528, 532-535 (1st Cir. 1976); Plantation Patterns, Inc. v. Commissioner, 462 F.2d 712, 722-723 (5th Cir. 1972), affg. T.C. Memo. 1970-182; Santa Anita Consol., Inc. v. Commissioner, 50 T.C. 536, 550 (1968). Capital contributions are not debt for purposes of section 166(a)(1). Roth Steel Tube Co. v. Commissioner, 800 F.2d 625, 629 (6th Cir. 1986), affg. T.C. Memo. 1985-58; Raymond v. United States, 511 F.2d 185, 189 (6th Cir. 1975). A guarantor of a corporate obligation may not deduct the payment to satisfy the guarantee if, considering the circumstances when the guarantee was created, the guarantee is a contribution to the capital of the corporation. Casco Bank & Trust Co. v. United States, supra at 534-535. *273 Whether a payment is a loan or a capital contribution for purposes of section 166 is a question of fact in the Sixth Circuit. Roth Steel Tube Co. v. Commissioner, supra; Smith v. Commissioner, 370 F.2d 178, 180 (6th Cir. 1966), affg. T.C. Memo. 1964-278. Traditional debt-equity principles apply in deciding whether a guarantee is a capital contribution or a loan. Plantation Patterns, Inc. v. Commissioner, supra; Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493 (1980). Petitioner has the burden of proof on this issue. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The facts surrounding the guarantee do not show that petitioner intended to create a bona fide debtor-creditor relationship between himself and J.T. We have considered several factors in deciding whether payment of a guarantee was a loan or capital contribution, such as: (a) Whether the initial capital of the corporation was adequate; (b) whether repayment of the taxpayer depended on the success of the business; (c) whether outside sources would have extended the corporation *274 a line of credit without the taxpayer's guarantee; (d) whether the corporation gave the taxpayer or the lender any security; (e) whether the taxpayer subordinated his right to be repaid by the corporation for payments on the guarantee to other corporate indebtedness; and (f) whether the corporation repaid the guaranteed loans. Plantation Patterns, Inc., v. Commissioner, T.C. Memo. 1970-182, affd. 462 F.2d 712 (5th Cir. 1972). No single factor controls. John Kelley Co. v. Commissioner, 326 U.S. 521 (1946); Plantation Patterns, Inc. v. Commissioner, 462 F.2d at 719. (a) Whether J.T. Had Adequate Initial Capital
Inadequate initial capital suggests that a guarantee of a corporation's debt may be an equity interest. Plantation Patterns, Inc. v. Commissioner, 462 F.2d at 722; Tyler v. Tomlinson, 414 F.2d 844 (5th Cir. 1969). Petitioner made a $ 500 initial capital contribution to J.T. With the guarantee, petitioner obtained a line of credit for the corporation without providing more adequate capitalization. *275 Plantation Patterns, Inc. v. Commissioner, 462 F.2d at 722. The guarantee allowed petitioner to avoid making an additional capital investment in J.T. and to operate the business with borrowed funds. Petitioner testified that he contributed an additional $ 10,000 to J.T.'s capital in 1977. Petitioner contends that an exhibit ("Statement of Changes in Financial Position for the Year Ended January 31, 1978") attached to an unaudited financial statement for J.T. corroborates his testimony. That exhibit shows that J.T.'s current liabilities exceeded its current assets by $ 10,882. It does not show that petitioner contributed $ 10,000 to J.T.'s capital. This factor favors respondent. (b) Whether Repayment of Petitioner Depended on J.T.'s Success
A guarantee of a corporation's debt may be an equity interest if repayment of the taxpayer depends on the corporation's success. See Gilbert v. Commissioner, 248 F.2d 399 (2d Cir. 1957), remanding T.C. Memo. 1956-137; Roth Steel Tube Co. v. Commissioner, T.C. Memo. 1985-58, affd. 800 F.2d 625 (6th Cir. 1986). *276 When petitioner made the guarantee, J.T. had no resources to pay petitioner other than J.T.'s earnings. There is no evidence that J.T. could have made any other arrangements to repay petitioner. We conclude that repayment depended on J.T.'s success. This factor favors respondent. (c) Whether Outside Sources Would Have Given J.T. a Line of Credit Without Petitioner's Guarantee
A guarantee of a corporation's debt may be an equity interest if no outside source would have advanced funds to the corporation without the taxpayer's personal guarantee. Nassau Lens Co. v. Commissioner, 308 F.2d 39, 47 (2d Cir. 1962), remanding 35 T.C. 268 (1960); Plantation Patterns, Inc. v. Commissioner, 462 F.2d at 722. There is no evidence that an outside source would have given J.T. a line of credit without petitioner's guarantee. J.T. reported losses since its inception and did not have any assets or other source of collateral to offer. This factor favors respondent. (d) Whether J.T. Gave the Bank or Petitioner Any Security for the Line of Credit
A guarantee of a corporation's debt may be an equity *277 interest if the corporation did not give any security to the lender. See Roth Steel Tube Co. v. Commissioner, 800 F.2d at 631; Montclair, Inc. v. Commissioner, 318 F.2d 38 (5th Cir. 1963), affg. T.C. Memo. 1962-10. J.T. had no assets or other security to give to a lender. This factor favors respondent. (e) Whether Petitioner Subordinated His Right To Be Repaid by J.T. to Other J.T. Creditors
A guarantee of a corporation's debt may be an equity interest if the taxpayer subordinated his right to be repaid by the corporation to other corporate creditors. Montclair, Inc. v. Commissioner, supra. There is no evidence whether petitioner subordinated his right of repayment to other creditors of J.T. We treat this factor as neutral. (f) Whether J.T. Repaid the Guaranteed Loans
A guarantee of a corporation's debt may be for an equity interest if the corporation did not repay any of the borrowed funds. Foresun, Inc. v. Commissioner, 348 F.2d 1006, 1009 (6th Cir. 1965), affg. and remanding 41 T.C. 706 (1964); *278 Plantation Patterns, Inc. v. Commissioner, T.C. Memo. 1970-182, affd. 462 F.2d 712 (5th Cir. 1972). Petitioner testified that J.T. repaid unsecured loans from the First National Bank of Akron before March 1979. However, he did not testify or prove that J.T. paid substantial amounts on the line of credit from Goodyear Bank. J.T. owed a large amount on the line of credit from Goodyear Bank when J.T. went out of business. [3] This factor favors respondent. (g) Conclusion
These factors show that petitioner's guarantee was a contribution to capital. Thus, petitioner may not deduct as a bad debt the $ 29,577.24 that he paid to Goodyear Bank. 3. Additional $ 5,284.59 Amount
Petitioner contends that he may deduct an additional $ 5,284.59 because he paid that amount on *279 behalf of J.T. This is the amount by which petitioner's bad debt deductions for 1987 and 1988 exceed the amount he paid for the 100-percent penalty and his guarantee of J.T.'s line of credit. Petitioner argues that he made the payment from funds he obtained from the sale of his home. However, there is no evidence to whom, when, or for what purpose petitioner made any such payment. There is no evidence of any payment in that amount other than petitioner's testimony. Petitioner testified that there were documents to support his claim that he paid this amount, but he did not produce them at trial. We conclude that petitioner may not deduct $ 5,284.59 as a bad debt. B. Addition to Tax Under Section 6651(a)(1)
Section 6651(a) provides for an addition to tax for failure to file a Federal income tax return by its due date (determined with regard to any extension of time to file it). Petitioner concedes that he filed his 1987 return late. A taxpayer must show reasonable cause and a lack of willful neglect to avoid the addition to tax under section 6651(a). Sec. 6651(a)(1); United States v. Boyle, 469 U.S. 241, 252 (1985). Petitioner contends *280 that he had reasonable cause to file his 1987 return late because he understood that Williams had requested an extension of time to file to give him time to obtain records when he returned to Ohio. A failure to file is due to reasonable cause if the taxpayer exercised ordinary business care, but he could not, nevertheless, file his return by the deadline prescribed by law. United States v. Boyle, supra at 246; Bank of the West v. Commissioner, 93 T.C. 462, 471 (1989). The failure to timely file a tax return generally is not excused by the taxpayer's reliance on an agent, and such reliance is not reasonable cause under section 6651(a)(1) for a late filing. United States v. Boyle, supra at 253. A taxpayer may have "reasonable cause" for late filing if the taxpayer relies on an attorney for substantive legal advice, but not to perform a nondelegable duty such as actually filing the return or request for extension of time to file. Estate of La Meres v. Commissioner, 98 T.C. 294, 314-315 (1992); see Jackson v. Commissioner, 864 F.2d 1521, 1527 (10th Cir. 1989), *281 affg. 86 T.C. 492 (1986). Petitioner testified that he relied on Williams to request an extension of time to file. Petitioner testified that he could not give all documents which were necessary to prepare his tax return to Williams by April 15, 1988, because petitioner was in Dallas, Texas, and Williams was in Akron, Ohio. Petitioner said he could not leave his job until May or June 1988. He did not know whether he received a copy of a request for extension of time to file. He did not know when his return would be due under a requested extension. Neither party had any records showing that petitioner had an extension of time to file his 1987 return. Petitioner testified about one extension to file. The automatic 4-month extension of time to file under section 1.6081-4, Income Tax Regs., expires on August 15. Petitioner did not explain the 9- or 10-month delay in filing, between May or June 1988 when he returned to Ohio to give his accountant additional documents and March 8, 1989, when he signed his 1987 return. Petitioner did not report on his 1987 return that he estimated and prepaid any tax as generally required by section 1.6081-4(a)(4), Income *282 Tax Regs., for an automatic extension of time to file. We are not convinced that petitioner filed his 1987 return late due to reasonable cause. Accordingly, we find that petitioner is liable for the addition to tax under section 6651(a) for failure to timely file his 1987 return. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. See Duncan v. Commissioner, T.C. Memo. 1993-370; Meersman v. Commissioner, T.C. Memo. 1993-47↩.
2. We disallowed a bad debt deduction for a sec. 6672 penalty in Arrigoni v. Commissioner, 73 T.C. 792, 801 n.9 (1980); Estate of Blazzard v. Commissioner, T.C. Memo. 1991-296; Baker v. Commissioner, T.C. Memo. 1981-137; cf. First Natl. Bank v. United States, 481 F. Supp. 633, 637-638 (N.D. Tex. 1979) (allowed creditor bank to deduct sec. 6672↩ payment on behalf of debtor as bad debt).
3. The record does not show the amount that J.T. owed Goodyear Bank when J.T. went out of business. However, petitioner paid $ 29,577.24 to satisfy his personal guarantee of that debt.↩