T.C. Memo. 1997-294

UNITED STATES TAX COURT

HERBERT C. ELLIOTT, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23599-95.                          Filed June 26, 1997.

John H. Trader, for petitioner.

Dennis R. Onnen, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge:  Herbert C. Elliott petitioned the Court to
redetermine respondent's determination with respect to his 1991

and 1992 taxable years. Respondent determined the following income tax deficiencies and penalties for those years:

|  |  | Penalty Sec. |
| Year | Deficiency | 6662(a) |
| 1991 | $25,105 | $5,021 |
| 1992 | 9,917 | 1,983 |

We must decide whether section 166 allows petitioner to deduct the $50,000, $47,350, $31,000, $12,000, and $5,000 amounts discussed below as worthless business debts. We hold it does not. We also decide whether petitioner is liable for the penalties determined by respondent under section 6662(a) for substantial understatement of income tax. We hold he is not.

Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded to the nearest dollar.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and exhibits submitted therewith are incorporated herein by this reference. Petitioner resided in Kansas City, Missouri, when he petitioned the Court. He filed for each of the years 1991 and 1992 a Form 1040, U.S. Individual Income Tax Return, using the filing status of "Single". These returns were prepared by petitioner's counsel, John H. Trader. Petitioner relied on Mr. Trader to prepare his returns correctly.

Petitioner is a painter by trade. He quit school after the eighth grade, and he began painting in 1951 as an apprentice. He started his own painting company in 1963, and he has either managed or comanaged his businesses since that time, performing all functions of an entrepreneur including marketing his services and supervising his employees. During the relevant time, he owned 90 percent of the stock of Elliott Painting Co. (EPC), which he had organized in 1972 to incorporate his painting business, and he was EPC's president, one of its directors, and one of its employees. EPC filed for bankruptcy and went out of business in 1985. The bankruptcy court closed the case in November 1988.

On August 12, 1983, Kansas American Bank (the Bank) lent EPC $500,000 (the Loan). The Loan was guaranteed by the U.S. Small Business Administration (SBA) and by petitioner, both personally and in his capacity as president of Electro-Magnetic Refinishers, Inc. (EMR), a corporation in which he owned 39 percent of its stock. In connection with the Loan, petitioner, in his capacity as EPC's president, signed a $500,000 note drafted on an SBA form and bearing an SBA loan number, and EPC gave the Bank a security interest in EPC's accounts receivable, inventory, machinery, equipment, and furniture and fixtures. At the behest of the Bank, petitioner, in the names of "Herbert Elliott", "Herbert E. Elliott", and "Herbert C. Elliott", also personally signed a $500,000 note (Petitioner's Note) and a deed of trust on three

tracts of his land to secure EPC's obligation under the Loan.
Petitioner's Note contained a legend that stated:

> This note is secured by a Deed of Trust of even date,
> and this note and Deed of Trust are given to secure the
> makers obligation under a note dated August 12, 1983,
> given by makers to Kansas American Bank for the benefit
> of Herbert Elliott, a/ka Herbert E. Elliott, a/k/a
> Herbert C. Elliott; together with and including any
> other obligations of the Makers to Kansas American Bank
> whether now existing or originating hereafter and this
> note does not create an additional indebtedness of its
> makers to said Bank.[1]

EPC used $317,051 of the $500,000 in Loan proceeds to pay off a
debt owed to the Bank, and EPC used the rest of the proceeds for
working capital. Petitioner expected EPC's business to prosper
as a result of the Loan, and he expected that the value of his
EPC stock would increase. Among other things, EPC's receipt of
the Loan proceeds allowed it to secure larger jobs.

The Loan went into default sometime in 1984. Before then,
EPC had made all payments on the Loan directly to the Bank. On
March 29, 1985, when the balance of the Loan was approximately
$481,467, the Bank assigned the Loan (including the related
security and guaranties) to the SBA.[2] The SBA foreclosed on the
mortgage of petitioner in which it held a security interest, and,
in October 1991, the SBA accepted an offer by petitioner to

---

[1] Petitioner's Note does not define the term "makers" in
either the small or capital case.

[2] On Mar. 12, 1985, EPC owed $478,380 on the Loan (principal
of $447,910 and interest of $30,470), and interest continued to
accrue at 13 percent per annum. We do not find that any payments
were made on the Loan between Mar. 12 and Mar. 29, 1985.

settle his liability on the Loan for $12,000. Petitioner paid the $12,000 to the SBA in October 1991 in complete satisfaction of his liability on the Loan.

In the same month, petitioner paid $5,000 to Fidelity & Deposit Co. of Maryland (F&D), a company that wrote contract surety bonds on behalf of EPC, to satisfy his liability to F&D. On or about December 9, 1982, petitioner had agreed to indemnify F&D for any surety bonds that it wrote on behalf of EPC, and F&D had paid $5,000 in 1991 to complete a job which EPC had been required, but failed, to complete. Petitioner had agreed to indemnify F&D so that EPC could secure larger jobs. Petitioner deducted his $5,000 payment to F&D on his 1991 return as a business bad debt. In the notice of deficiency, respondent reflected his determination that the payment was deductible as a nonbusiness bad debt and that petitioner was allowed $3,000 of this deduction in 1991 and $2,000 in 1992.

EPC had unpaid payroll tax liabilities (reportable on Form 941, Employer's Quarterly Federal Tax Return) for the fourth quarter of 1983, the first and fourth quarters of 1984, and the first quarter of 1985. On July 14, 1986, the Commissioner assessed against petitioner the trust fund portions of those liabilities under the authority of section 6672. The assessed amount equaled $107,006. Eight months later, the Commissioner assessed against petitioner a trust fund recovery penalty under the authority of section 6672 with respect to payroll tax

liabilities of EMR for the fourth quarter of 1983, the first and fourth quarters of 1984, and the first and second quarters of 1985. This assessed amount equaled $42,407.

Petitioner paid $18 with respect to the EPC liabilities and $88 with respect to the EMR liabilities, and he sued the United States on or about September 19, 1989, for a refund of these payments. The United States conceded that petitioner was not liable for the penalty with respect to EMR for the first and second quarters of 1985 and that the penalty with respect to EMR for the fourth quarter of 1984 was $4,927. In an order filed May 28, 1991, the District Court hearing the case ruled that petitioner also was not liable for the penalty with respect to EMR for the fourth quarter of 1983 and the first quarter of 1984. Thus, the total penalty against petitioner with respect to EMR was reduced to $4,927.

On April 16, 1991, petitioner offered to settle the two refund cases for $31,000. One month later, the United States accepted his offer, and, in the next month, petitioner paid the United States $31,000 in complete satisfaction of his liability under section 6672. The United States applied petitioner's payment to the $107,006 penalty assessed against him with respect to the EPC liabilities. Petitioner had not designated any part of the payment as interest, and the United States did not apply any part of the payment to interest.

Petitioner reported on his 1991 and 1992 tax returns that he was entitled to deduct losses under section 1244 of $50,000 and $47,350, respectively, on the theory that the Bank lent him the $500,000, that he contributed the $500,000 to EPC's capital, and that his contribution became worthless in 1988. Petitioner's 1991 and 1992 tax returns included a Form 8275, Disclosure Statement, and an attachment thereto, that set forth the facts of his theory as well as his position on the deductibility of the amounts under section 1244. Petitioner's 1991 Form 8275 and attachment thereto also revealed the facts concerning the $31,000, $12,000, and $5,000 amounts at issue herein and his position on the deductibility of these amounts, which he claimed as business bad debt deductions on the 1991 return. Petitioner's position on these latter amounts, as stated in his 1991 return, is the same position that petitioner takes in the instant proceeding.

Petitioner's Federal income tax returns report that he earned personal service income for every year following and including the year of the Loan. In 1991 and 1992, petitioner worked as an employee of Elliott Drywall & Asbestos, Inc., and he was paid compensation of $73,000 and $52,000 during the respective years.

## OPINION

Petitioner must prove that respondent's determinations set forth in the notice of deficiency are incorrect. Rule 142(a);

Welch v. Helvering, 290 U.S. 111, 115 (1933).  Petitioner also must prove his entitlement to the disputed deductions. Deductions are a matter of legislative grace.  New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

1.  $50,000 and $47,350 Amounts

Petitioner claimed on his 1991 and 1992 Forms 1040 that he was entitled to deduct $50,000 and $47,350, respectively, under section 1244.  Petitioner has abandoned this claim and now claims that he may deduct these amounts as business bad debts under section 166.  Petitioner contends that the Bank lent him the $500,000 at issue, and that he lent this amount to EPC mainly to secure income that it was paying him as rent and salary. Petitioner concludes that the cessation of EPC caused its debt to him to become worthless, triggering his entitlement to a business bad debt deduction.  Petitioner concedes that he has no written documentation to support his claim of a loan to EPC but states that he regularly lent money to EPC in this manner.

Respondent determined that petitioner was not allowed to deduct either the $50,000 or the $47,350 amount.  According to respondent, the Bank lent the money to EPC.  Respondent conceded at trial that petitioner is entitled to deduct a $12,000 nonbusiness bad debt for the amount that he paid the SBA to satisfy his liability on the Loan.

We agree with respondent.  We have found as a fact that the Bank lent the $500,000 to EPC, and we read the record as having

ample support for this finding. In support of his assertion that the Bank lent the funds to him, petitioner focuses primarily on Petitioner's Note and asserts that this note establishes that he was primarily liable for the repayment of the Loan. We disagree. We read Petitioner's Note to be nothing more than another form of security required by the Bank as a precondition to making the $500,000 loan to EPC. In addition to the fact that Petitioner's Note stated specifically that it did not create a separate indebtedness, we read Petitioner's Note as well as every other document connected with the Loan to state clearly that EPC was the debtor and that petitioner was a guarantor. Nor do we find anything in the record to persuade us that petitioner and EPC had a debtor/creditor relationship during the relevant year. As a point of fact, EPC's 1982 and 1983 Form 1120, U.S. Corporation Income Tax Return, stated explicitly that neither EPC nor petitioner owed the other anything during the period from September 1, 1982, through August 31, 1984. We conclude, as we have found, that the Bank made the Loan to EPC, and that petitioner guaranteed the Loan.

With this conclusion in mind, we turn to the income tax consequences that flow from petitioner's position as a guarantor. A guarantor may deduct a debt that he or she guaranteed when the guarantor's liability for the debt is certain and he or she actually pays it. See <u>Helvering v. Price</u>, 309 U.S. 409 (1940); <u>Eckert v. Burnet</u>, 283 U.S. 140 (1931). If the guarantor

guaranteed the debt in the course of his or her trade or business, payments on the guaranty are treated as a business bad debt at the time of payment if the guarantor's right of subrogation against the debtor is then worthless. In such a case, the bad debt is an ordinary deduction that may offset ordinary income. Sec. 1.166-9(a), Income Tax Regs. If, on the other hand, the guarantor guaranteed the debt in the course of a transaction entered into by the guarantor for profit, and not in the course of his or her trade or business, the bad debt is a short-term capital loss realized when paid, and the recognition of it is subject to the limitations of section 1211. See Weber v. Commissioner, T.C. Memo. 1994-341; Smartt v. Commissioner, T.C. Memo. 1993-65; Brooks v. Commissioner, T.C. Memo. 1990-259; sec. 1.166-9(b), Income Tax Regs.

A guarantor is entitled to a business bad debt deduction for a guaranteed debt that he or she pays when the guarantor proves that: (1) He or she was engaged in a trade or business at the time of the guaranty and (2) the guaranty was proximately related to the conduct of that trade or business. See Putoma Corp. v. Commissioner, 66 T.C. 652 (1976), affd. 601 F.2d 734 (5th Cir. 1979); sec. 1.166-5(b), Income Tax Regs. Whether the guarantor is engaged in a trade or business is factual. United States v. Generes, 405 U.S. 93, 104 (1972); sec. 1.166-5(b), Income Tax Regs. Whether a guaranty is proximately related to the guarantor's trade or business rests on his or her dominant

motive, at the time of the guaranty, for becoming a guarantor. United States v. Generes, supra at 104; Harsha v. United States, 590 F.2d 884 (10th Cir. 1979); French v. United States, 487 F.2d 1246 (1st Cir. 1973); Weber v. Commissioner, supra; Smartt v. Commissioner, supra. When a guarantor of a corporate debt is a shareholder of the corporation, as well as one of its employees, mixed motives for the guaranty are usually present, and the critical fact is which motive is dominant. United States v. Generes, supra at 100. The dominant motive must be business related, as opposed to investment related, for a guaranty to be business related. See Smith v. Commissioner, 60 T.C. 316, 319 (1973). A motive is business related when the guarantor aims to increase or protect his or her salary from the debtor corporation. A motive is investment related when the guarantor aims to increase or protect the value of his or her stock in the debtor corporation. See Weber v. Commissioner, supra. Objective facts weigh more heavily then the guarantor's unsupported statements of subjective intent in measuring his or her motive. Kelson v. United States, 503 F.2d 1291 (10th Cir. 1974).

Following our detailed review of the record, we are not persuaded that petitioner's dominant motive in guaranteeing the Loan was business related. Indeed, we read the record to point to the opposite conclusion. Petitioner testified that he expected EPC's business to prosper as a result of the Loan, and that this, in turn, would increase the value of his EPC stock.

Petitioner also has generated large amounts of personal service income in years following and including the year of the Loan, and we do not find that petitioner's guaranty of the Loan was tied to his receipt of this income. We hold that petitioner's dominant motive when he guaranteed the Loan was to protect his investment in EPC, and, hence, that his deduction with respect thereto is attributable to a nonbusiness bad debt.

As to the amount of petitioner's deduction, we find that petitioner paid the Bank $12,000, and that it foreclosed on his land that he pledged as security for the Loan. We decline to allow petitioner any deduction with respect to the land. The parties have not adequately addressed the tax consequences surrounding the SBA's foreclosure of the mortgage, and the record does not contain enough data for us to determine the tax consequences, including petitioner's deduction (if any), with respect thereto. See Helvering v. Hammel, 311 U.S. 504 (1941) (a foreclosure is a "sale" precipitating the recognition of gain or loss). We are unable to find, for example, the value of the land at the time of the foreclosure, the amount realized by petitioner upon the foreclosure, or petitioner's basis in the land at the time of the foreclosure. Accordingly, we hold that petitioner's deduction is limited to $12,000.

## 2. $31,000 Amount

Respondent also determined that petitioner could not deduct the $31,000 payment that he made to the United States in 1991.

Petitioner claims that this payment is deductible as a business bad debt mainly because EPC's articles of incorporation provided that it would indemnify him for this payment and EPC failed to do so. We disagree. Petitioner is not entitled to deduct any portion of this amount. Even if we were to assume that EPC was required to indemnify petitioner for this payment, an assumption which we do not find as a fact, petitioner would be unable to deduct this amount because he paid it in settlement of amounts assessed against him under section 6672. Amounts paid for section 6672 assessments are nondeductible. See sec. 162(f); sec 1.162-21(b), Income Tax Regs; see also Arrigoni v. Commissioner, 73 T.C. 792 (1980); Patton v. Commissioner, 71 T.C. 389 (1978); Smith v. Commissioner, 34 T.C. 1100 (1960), affd. per curiam 294 F.2d 957 (5th Cir. 1961); Duncan v. Commissioner, T.C. Memo. 1993-370, affd. 68 F.3d 315 (9th Cir. 1995).

Petitioner argues that the law is different because he had a right of indemnification from EPC. We disagree. As the Court stated in Arrigoni v. Commissioner, supra at 801 n.9, in rejecting a similar claim:

> even if a right to reimbursement exists, petitioners would still fail on their claim. Sec. 162(f) makes the addition to tax imposed by sec. 6672 nondeductible. Patton v. Commissioner, 71 T.C. 389 (1978). Since the addition to tax imposed by sec. 6672 is personal to the taxpayer, petitioners cannot invoke sec. 166 to circumvent the prohibition of a deduction under sec. 162(f). Cf. Smith v. Commissioner, 34 T.C. 1100 (1960), affd. per curiam 294 F.2d 957 (5th Cir. 1961). The deductibility of the payments must be treated in a manner consistent with the proper treatment of the

underlying obligation. Rude v. Commissioner, 48 T.C. 165 (1967). This Court will not permit the taxpayer to transform a nondeductible personal obligation into a deductible corporate debt when to do so would circumvent the effectiveness of sec. 6672. But see First Natl. Bank of Duncanville v. United States, * * * [481 F. Supp. 633 (N.D. Tex. 1979)].

We hold for respondent on this issue.

## 3. $12,000 and $5,000 Amounts

Petitioner argues he is entitled to deduct the $12,000 and $5,000 amounts as business bad debts because the deductions arose from actions that he had taken to secure the receipt of his earnings from EPC. Respondent concedes that both amounts are deductible as nonbusiness bad debts.

We agree with respondent. We have previously addressed and rejected petitioner's claim concerning the $12,000 amount, holding that he may deduct this amount as a nonbusiness bad debt. For the same reasons that pertain thereto, we hold likewise with respect to the $5,000 amount. Petitioner has failed to persuade us that he incurred the $5,000 debt for reasons other than investment.

## 4. Applicability of Accuracy-Related Penalty

Respondent determined that petitioner was liable for an accuracy-related penalty under section 6662(a) for each year because he substantially understated his income tax. See sec. 6662(d). As applicable herein, section 6662(a) imposes an accuracy-related penalty equal to 20 percent of the portion of an underpayment that is attributable to substantial understatement.

Petitioner must prove that respondent erred in determining that the accuracy-related penalty applied to the instant years. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); see also Allen v. Commissioner, 925 F.2d 348, 353 (9th Cir. 1991), affg. 92 T.C. 1 (1989); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). Respondent erred if petitioner's understatement did not exceed the greater of 10 percent of the tax required to be shown on the return or $5,000. See sec. 6662(d)(1). For this purpose, an amount was not understated to the extent it was based on substantial authority or adequately disclosed in the return or in a statement attached to the return. Sec. 6662(d)(2)(B).

We disagree with respondent that petitioner was subject to an accuracy-related penalty in either of the years at issue. We look to petitioner's 1991 and 1992 tax returns, and we find that petitioner disclosed adequately the relevant facts of his treatment of the $50,000 and $47,350 deductions.[3] Respondent argues that petitioner's disclosure is inadequate because he relied on section 1244 to exclude these amounts from his gross income, and he has abandoned that position in this proceeding. We disagree. The test of adequate disclosure does not rest solely on whether a taxpayer has identified the correct section of the Code to support a reported deduction. What is critical is

---

[3] We also note that the carryover arose from a purported loss in 1988, and that petitioner made a similar disclosure on his 1988 Form 1040.

whether the taxpayer adequately disclosed enough relevant data concerning the treatment of the item to alert the Commissioner to a potential controversy.  See <u>Estate of Reinke v. Commissioner</u>, 46 F.3d 760 (8th Cir. 1995), affg. T.C. Memo. 1993-197; <u>Schirmer v. Commissioner</u>, 89 T.C. 277, 285-286 (1987).  We find from petitioner's returns that such was the case.

Respondent also asserts that the adequate disclosure test is inapplicable because petitioner did not have a reasonable basis to sustain his position.  We disagree.  We do not believe that petitioner's position was unreasonable.  Petitioner has an eighth grade education, and, under the facts herein, we believe that it was reasonable for him to rely on Mr. Trader's preparation of his tax returns.  Inasmuch as the other disputed amounts were also disclosed similarly, we hold for petitioner on this issue.

In reaching our holdings herein, we have considered all arguments made by the parties for contrary holdings and, to the extent not discussed above, find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.
